FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION   2012 JUL 26  PM 3: 06

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
CASE NO. JACKSONVILLE FLORIDA

3:12-cv-850-J-25mce

THE CITY OF JACKSONVILLE,
a political subdivision of the State of Florida,

                    Plaintiff,

vs.

JACKSONVILLE HOSPITALITY HOLDINGS
L.P., a foreign limited partnership; SHOPPES OF
LAKESIDE, INC., a Florida corporation;
CONFEDERATE PARKS, LLC, a Florida joint
venture; WARREN PARTNERSHIP, a Florida
general partnership a/k/a WARREN and WARREN
Partnership; ELLIS R. WARREN, NEDRA WARREN,
HAROLD WARREN, and VITA WARREN,

                    Defendants.
_____/

## COMPLAINT

Plaintiff, the City of Jacksonville ("the City"), sues Jacksonville Hospitality Holdings L.P. ("JHH"); Shoppes of Lakeside, Inc. ("Shoppes"); Confederate Parks, LLC ("Confederate Parks"); Warren Partnership, and Ellis R. Warren, Nedra Warren, Harold Warren and Vita Warren (collectively, the "Warren Family"), and alleges the following:

### STATEMENT OF JURISDICTION

1.      The City is a municipal corporation and political subdivision of the State of Florida.

2.      Defendant JHH, is a Delaware limited partnership, which has an ownership interest in real property at issue in this litigation.

3.      Defendant Shoppes of Lakeside, Inc. ("Shoppes"), is a Florida corporation

which has an ownership interest in real property at issue in this litigation. [1]

4.      Confederate Parks is a Florida joint venture of JHH and Shoppes which has an ownership interest in real property at issue in this litigation.

5.      Defendant Warren Partnership is a Florida general partnership which has an ownership interest in real property at issue in this litigation.

6.      Defendants, the Warrens, are the partners of Warren Partnership, each of whom resides in Jacksonville, Florida and has an ownership interest in real property at issue in this litigation.

7.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      The Court has jurisdiction over the subject matter and parties in this case, pursuant to 28 U.S.C. §§, 1331,1334 and 1367.

9.      This venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this suit transpired in and the properties at issue are located in Duval County, Florida. [2]

## BACKGROUND AND FACTS

10.      The Florida Department of Environmental Protection ("DEP") has identified 24 locations in Florida where manufactured gas plants ("MGPs") formerly operated.  The Main Street MGP was located on the corner of State and Main Streets in downtown Jacksonville ("the Site").

---

[1] Shoppes is the debtor in bankruptcy proceedings before the Middle District of Florida, Case No 3:10-bk-5199-PMG. However, by Order entered on May 29, 2012, the Bankruptcy Court granted the City leave to file suit against Shoppes.  *See* **Exhibit A**, Bankruptcy Order Confirming Reorganization Plan.

[2] Pursuant to 42 U.S.C. § 9613(1) a copy of this complaint has been provided to the Attorney General of the United States and to the Administrator of the United State Environmental Protection Agency ("EPA").

11.     The Site, specifically located at 901 North Main Street, Jacksonville, Florida 32202, is currently owned by JHH.

12.     MGPs used coal or coke, steam, and a gasification agent to produce a combustible gas for such things as street lights, home lighting and stoves.   Waste products from MGPs included coal tar,  cyanide, heavy metals and other deleterious materials.

13.     Coal tar, for instance, contains a number of volatile substances, such as benzene and certain hydrocarbons.

14.     These and other waste products were often discharged in (and contaminated) the soils and waters located in and around MGP sites.

15.     In September, 2001, the City became aware of contamination issues at Confederate Park, part of which is in and part of which is near to the Site. Contamination testing revealed conditions typical of abandoned MGP sites.

16.     In March 2002, the City entered into a Consent Order with the DEP whereby it agreed to assess and prepare a feasibility study for the remediation of Confederate Park. Numerous tests and studies were conducted for several years thereafter.

17.     In the fall of 2009, the DEP sent a letter to the U.S. Environmental Protection Agency ("EPA") requesting designation of the Site as a "Superfund Site" and listing it on the "National Priorities list."

18.     Since it became aware of the problem, the City has collaborated with the DEP and EPA to resolve it.

19.     The City has also attempted to engage Defendants and other potentially responsible parties ("PRPs") to join in the cleanup effort, as their properties were determined to be a potential source of contaminations at the park.

3

20.     For instance, in the summer and fall of 2011, the City held meetings, conferences, and had other interactions with the Defendants/PRPs to discuss contributions toward the resolution of the contamination issues.  However, the meetings and negotiations were unsuccessful.

21.     Environmental reports show that coal tar contamination located on the Shoppes and JHH Parcels (937 Main Street, 901 N. Main Street), and the Warrens/Warren Partnership Parcel (925 North Ocean Street) continues to contaminate Confederate Park and rights-of-way owned by the City.

22.     All conditions precedent to filing this suit have been satisfied or waived.

### COUNT I – CERCLA VIOLATIONS

23.     The City realleges and incorporates herein by reference the allegations stated in paragraphs 1 through 22 above.

24.     The conditions and events described above render Defendants liable to the City under Section 107(a)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(1).

25.     The City has suffered damages due to Defendants' contamination of its property and will continue to suffer additional contamination emanating from Defendants' property.  Such damages include, without limitation, response and cleanup costs as defined by CERCLA and the Consent Order.

26.     The City's response and cleanup programs comply with the National Contingency Plan, as described in Section 105 of CERCLA, 42 U.S.C. § 9605.  See also 40 C.F.R. Part 300.

27.     The City is entitled to recover associated costs and expenses from each

4

Defendant.

28.     The City is also entitled to a declaration and judgment that each Defendant is jointly and severally liable for the City's damages, costs, expenses and other losses.

WHEREFORE, the City demands judgment in its favor, and against the Defendants as follows:

    a.  Adjudging, decreeing and declaring that Defendants are jointly and severally liable to the City pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for past and future response costs incurred in connection with remediation of the Site, and City property in and around it, together with interest thereon;

    b.  Ordering Defendants to pay the City for past and future response costs related to remediation of the Site, and City property in and around it, together with interest thereon, and calculated in accordance with Section 107(a), 42 U.S.C.§ 9607(a);

    c.  Awarding the City attorney's fees, costs, and expenses incurred as a result of this litigation; and

    d.  Granting such other relief as the Court deems just and appropriate.

## COUNT II – CERCLA CONTRIBUTION CLAIM

29.     The City realleges and incorporates herein by reference the allegations stated in paragraphs 1 through 22 above.

30.     Pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), each Defendant is liable to the City for contribution to cover its damages, costs, expenses, and attorneys' fees associated with this litigation and the response and remediation activities

described above.

31.     The same statutory provision also entitles the City to a judicial allocation of costs and expenses for which each party is responsible.

WHEREFORE, the City demands judgment in its favor and against the Defendants as follows:

   a.  Adjudging, decreeing and declaring that Defendants are jointly and severally liable, pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(F)(3)(B), for contribution to the City for its past and future response costs, together with interest thereon;

   b.  Allocating responsibility for such costs among the City and Defendants pursuant to Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(F)(3)(B);

   c.  Ordering Defendants to provide contribution to the City for its past and future response costs, together with interest thereon, calculated in accordance with Section 107(a), 42 U.S.C.§ 9607(a);

   d.  Ordering Defendants to pay the City its costs, expenses, and attorney's fees incurred as a result of this action; and

   e.  Granting the City such further relief as the Court deems just and appropriate.

## COUNT III – VIOLATION OF SECTION 376.313, FLORIDA STATUTES

32.     The City realleges and incorporates herein by reference the allegations stated in paragraphs 1 through 22 above.

33.     Environmental assessments conducted by the City and others prove that there has been a "discharge or other condition of pollution" covered by Sections 376.30-376.317, Fla. Stat.

34.     Section 376.313, Fla. Stat., prohibits such discharge or other condition of pollution.

35.     Defendants have violated Section 376.313(3), Fla. Stat., and continue to do so, causing the City to suffer damages.

36.     Section 376.313, Fla. Stat., authorizes the recovery of such damages for the above described pollution, as well as attorney's fees, costs and expenses associated with this action.

WHEREFORE, the City demands judgment in its favor and against the Defendants for:

     a.  Compensatory damages together with interest thereon;

     b.  An injunction compelling the Defendants to clean up and eliminate the pollution and contamination described above;

     c.  A Declaration that Defendants are liable for all costs associated with the remediation of the Site and the City's property in and around it, including interest and attorney's fees; and

     d.  Granting such other relief as the Court deems just and appropriate.

## COUNT IV – TRESPASS TO CITY'S PROPERTY

37.     The City realleges and incorporates herein by reference the allegations stated in paragraphs 1 through 22 above.

38.     The hazardous waste, contamination, and pollutants discussed above entered upon the City's property from Defendants' properties.

39.     Based upon the foregoing, each Defendant committed a trespass upon the City's property.

40.     The City never consented to the conduct of the Defendants which resulted in the

trespass upon its property.

41.     As a result of the past and continuing trespass, the City has suffered and continues to suffer damages.

WHEREFORE, the City demands judgment in its favor and against the Defendants for:

      a.  All damages caused by Defendants' past and continuing trespass upon the City's property;

      b.  Prejudgment and post-judgment interest on all amounts so awarded; and

      c.  Such other relief as the Court deems just and appropriate.

### COUNT V - NUISANCE

42.     The City realleges and incorporates herein by reference the allegations stated in paragraphs 1 through 22 above.

43.     Defendants permitted or maintained a condition on their property which caused and continues to cause a substantial and unreasonable interference with the City's use and enjoyment of its property, thereby creating a nuisance.

44.     As a result of such conduct, Defendants have caused injury and damages to the City.

WHEREFORE, the City demands judgment in its favor and against the Defendants for:

      a.  All damages caused by Defendants' conduct;

      b.  Prejudgment and post-judgment interest on all amounts so awarded; and

      c.  Such other and further relief as the Court deems just and appropriate.

### COUNT VI - NEGLIGENCE

45.     The City realleges and incorporates herein by reference the allegations stated herein in paragraphs 1 through 22 above.

46.     Defendants had a duty to investigate, protect against, and prevent the contamination of the City's property.

47.     Defendants breached their duty by failing to investigate and protect against the contamination and allowing pollutants and deleterious substances to enter the soils and groundwater near to and on the City's property.

48.     As a result of the negligence of Defendants, the City has suffered and continues to suffer damages.

WHEREFORE, the City demands judgment in its favor and against Defendants for:

    a.   All damages caused by Defendants' negligence;

    b.   Prejudgment and post-judgment interest on all amounts so awarded; and

    c.   Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

The City demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of July, 2012.

OFFICE OF GENERAL COUNSEL

By: _____

MICHAEL B. WEDNER
Deputy General Counsel
Fla. Bar No.: 287431
DAVID J. D'AGATA
Assistant General Counsel
Fla. Bar No.: 663891
JASON R. TEAL
Assistant General Counsel
Fla. Bar No.: 157198
City of Jacksonville
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Tele: 904-630-1700
Facsimile: 904-630-1316

9

mwedner@coj.net
dagata@coj.net
jteal@coj.net
*Attorneys for Plaintiff, the City of
Jacksonville*

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In Re:                                        Case No.: 3:10-bk-5199-PMG

SHOPPES OF LAKESIDE, INC.                     Chapter 11

       Debtor.

_____/

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION
### DATED APRIL 20, 2011

This case was before the Court on May 2, 2012 for the Confirmation Hearing on the Debtor's Chapter 11 Plan. The Amended Plan under Chapter 11 of the Bankruptcy Code dated April 20, 2011 (Docket #328), having been transmitted to creditors and equity security holders; and

It having been determined after hearing on notice that the requirements for Confirmation set forth in 11 U.S.C. § 1129(a) and (b) have been satisfied; it is

**ORDERED:**

1.     The Debtor's Amended Plan of Reorganization dated April 20, 2011, as modified, is confirmed. A copy of the Confirmed Plan is attached as Exhibit 1.

2.     The Plan is hereby amended as follows:

       a.   Class 3 second mortgage of Bisbee-Baldwin Corporation on 300 W. Adams St., Jacksonville FL to be paid its claim of $409,200 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 4.75%, interest adjustable bi-annually (January 1st and July 1st) at the Wall Street Journal prime rate plus 1.5%, with a floor of 4.75%. Based upon this treatment, the Debtor shall make an initial

1

payment of $2,644.35 on February 1, 2012. (ii) A balloon payment for the remaining balance shall be due on February 1, 2017. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 3 Claim of Bisbee-Baldwin)* (Doc. No. 453) are incorporated by reference as though fully set forth herein.

b. Class 6 secured claim of HANCOCK BANK on 42 East Coast Drive, Atlantic Beach, FL 32233 paid in full from non-estate funds.

c. Class 7 secured claim of HERITAGE BANK on 100 E. Adams a/k/a 123 N. Ocean St., Jacksonville FL to be paid as follows: (i) Payment of $19,044.53 to cure arrears for the two loans; (ii) Monthly payments beginning October 15, 2011 of principal and interest based upon a twenty-five (25) year amortization with interest of prime plus two percent (2%) adjusted annually, and a balloon payment for the remaining balance due five (5) years from the date of the first payment; (iii) Monthly payments shall be made as stated in paragraph (ii) above for fifty-nine (59) months based upon the treatment in paragraph (ii) above; The initial monthly payment is $2,100.45 based upon a twenty-five (25) year amortization of $347,889.94 with 5.25% interest. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 7 Claim of Heritage Bank)* (Doc. No. 388) are incorporated by reference as though fully set forth herein.

d. Class 9 secured claim of Iberiabank on 1341 Pearl St. a/k/a 205 W. Third St., Jacksonville FL to be paid secured claim of $960,071.00 in full according to the Settlement Agreement dated October 31, 2011 (the "Settlement Agreement"), which

2

include, but are not limited to the following terms: (i) Monthly interest payments beginning October 15, 2011 in the amount of WSJ prime rate plus one percent. Such payments shall be made on the 15th day of each successive month until July 31, 2014, at which time all remaining sums of principal and interest due and owing shall be paid in full. (ii) Monthly principal payments in the amount of $5,305.50 beginning on October 15, 2011 and subsequent monthly principal payments in the same amount shall be made on the 15th day of each successive month until July 15, 2014. (iii) Assign to Iberiabank all right, title and interest to any and all insurance proceeds related to the fire at the Property on or about April 25, 2011. Any insurance funds paid to Shoppes and/or Chris Hionides with regard to the Property shall be paid to Iberiabank within twenty four (24) hours of receipt of same. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 9 Claim of IberiaBank)* (Doc. No. 456) are incorporated by reference as though fully set forth herein.

e.  Class 10 secured claim of Iberiabank on 233 W. Duval St., Jacksonville, FL (the "Property") to be paid secured claim of $3,877,210.88 in full according to the Settlement Agreement dated October 31, 2011 (the "Settlement Agreement"), which includes, but is not limited to, the following terms: (i) Monthly interest payments beginning October 15, 2011 in the amount of WSJ prime rate plus one percent. Such payments shall be made on the 15th day of each successive month until July 31, 2014, at which time all remaining sums of principal and interest due and owing shall be paid in full. (ii) Monthly principal payments in the amount of $21,694.50 beginning on October 15, 2011 and subsequent monthly principal payments in the same amount

3

shall be made on the 15th day of each successive month until July 31, 2014. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 10 Claim of IberiaBank)* (Doc. No. 457) are incorporated by reference as though fully set forth herein.

f.  Class 11 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest to Jacksonville Bank, on 937 Main St., Jacksonville FL to be paid secured claim of $727,978.04 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 5.25%, interest adjustable bi-annually at the Wall Street Journal prime rate plus 2.0%, with a floor of 5.25%. Based upon this treatment, the Debtor shall make an initial payment of $4,935.14 on December 1, 2011. (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 11 Claim of ARS Investors)* (Doc. No. 431) are incorporated by reference as though fully set forth herein.

g.  Class 12 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest to Jacksonville Bank, on 300 W. Adams St., Jacksonville FL to be paid secured claim of $3,502,221.57 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 4.75 %, interest adjustable bi-annually at the Wall Street Journal prime rate plus 1.5%, with a floor of 4.75%. Based upon this treatment, the Debtor

4

shall make an initial payment of $22,758.56 on December 1, 2011. (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 12 Claim of ARS Investors)* (Doc. No. 432) are incorporated by reference as though fully set forth herein.

h. Class 13 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest to Jacksonville Bank, successor in interest to Oceanside Bank, on 520 N. Hogan St., Jacksonville FL to be paid secured claim of $368,671.27 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 5.25 %, interest adjustable bi-annually at the Wall Street Journal prime rate plus 2.0%, with a floor of 5.25%. Based upon this treatment, the Debtor shall make an initial payment of $2,499.31 on December 1, 2011. (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 13 Claim of ARS Investors)* (Doc. No. 433) are incorporated by reference as though fully set forth herein.

i. Class 14 secured claim of Putnam State Bank on 2440-2444 Mayport Rd., Atlantic Beach FL to be paid secured claim of $1,513,717.60 in full, plus attorney fees, according to the following terms: (i) Monthly payments of approximately $10,025.12 beginning April 15, 2012 and continuing for a period of sixty (60) months according

5

to a twenty-year amortization schedule with interest of 5.0%. (The amount of attorney fees needs to be finalized but have been estimated for purposes of calculating the estimated monthly payment); (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Chapter 11 Plan Between Debtor-in-Possession and Putnam State Bank (Doc. No. 460) are incorporated by reference as though fully set forth herein.

j.  Class 15 secured claim of SRB Servicing, LLC on 119 E. Forsyth St., Jacksonville FL to be paid secured claim of $502,212.45 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $3,009.50 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $39,162.84 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $743.55 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 15 Claim of SRB Servicing, LLC)* (Doc. No. 412) are incorporated by reference as though fully set forth herein.

k.  Class 16 secured claim of SRB Servicing, LLC on 231 E. Adams and 0 E. Adams, St., Jacksonville FL to be paid secured claim of $460,108.46 in full according to the

6

following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $2,757.19 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $37,354.73 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $709.22 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 16 Claim of SRB Servicing, LLC)* (Doc. No. 413) are incorporated by reference as though fully set forth herein.

l.  Class 17 secured claim of SRB Servicing, LLC on 211 E. Bay St., Jacksonville FL to be paid secured claim of $258,092.29 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $1,546.61 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $11,595.77 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $220.16 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in

7

the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 17 Claim of SRB Servicing, LLC)* (Doc. No. 414) are incorporated by reference as though fully set forth herein.

m. Class 18 secured claim of SRB Servicing, LLC on 1452 N. Main St. a/k/a 1440 N. Main St., Jacksonville FL to be paid secured claim of $168,237.69 in full according to the following terms: (i) Paid in full in Class 19. (ii) Creditor paid property taxes in the amount of $13,650.80 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $259.17 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 18 Claim of SRB Servicing, LLC)* (Doc. No. 415) are incorporated by reference as though fully set forth herein.

n. Class 19 secured claim of SRB Servicing, LLC on 30 W. 5th St. and 33 W. 4th St., Jacksonville FL to be paid secured claim of $168,237.69 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $1,008.16 to commence December 15, 2011 with a balloon payment due on December 15, 2018. Creditor paid property taxes in the amount of $27,794.36 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly

8

payments of $527.70 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 19 Claim of SRB Servicing, LLC)* (Doc. No. 416) are incorporated by reference as though fully set forth herein.

o. Class 20 secured claim of Vystar Credit Union on 1351 Silver Street, Jacksonville FL 32206 to be paid secured claim of $354,349.29 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty (20) year amortization schedule with 5.5% interest. Monthly payments of principal and interest shall be $2,437.52 beginning March 1, 2012. (ii) A balloon payment for the remaining balance shall be due eighty-four (84) months from the date of the first payment. (iii) The terms of the underlying loan documents (as described more particularly in, and attached to, Proof of Claim 26 filed by Vystar dated October 18, 2010) not modified herein shall remain in full force and effect. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 20 Claim of Vystar Credit Union)* (Doc. No. 441) are incorporated by reference as though fully set forth herein.

p. Class 21 secured claim of J PROPERTIES IV, LLC, successor-in-interest to Vystar Credit Union, on 1310 N. Laura St., Jacksonville FL is treated as follows: (i) The Debtor consents to the entry of an order, substantially in the form attached as Exhibit A, granting the Motion for Relief from Stay and authorizing J Properties to file a foreclosure action as to the Property (the "Foreclosure Action"), which Order shall provide that it is not stayed pursuant to Rule 4001(a)(3), Federal Rules of Bankruptcy

9

Procedure; (ii) The Debtor will assert no defenses to the Foreclosure Action and consents to the immediate entry of a foreclosure judgment in the Foreclosure Action; (iii) The disposition of the Property through a foreclosure sale pursuant to the Foreclosure Action will satisfy the Judgment and Claim No. 27 and upon such disposition, J Properties will provide the Guarantors with a satisfaction of the Judgment; and (iv) Upon the disposition of the Property through a foreclosure sale, J Properties will withdraw its Motion to Dismiss.

q. Class 23 secured claim of Z-S GENERAL PARTNERSHIP on 233 W. Duval Street, Jacksonville FL paid in full from non-estate funds.

r. Class 25 secured claim of Heartwood 88, LLC on 1351 Silver St., 231 E. Adams, & 320 E. Adams St., Jacksonville FL to be paid secured claim of $25,631.56 in full together with interest at a rate of 6% in equal monthly installments over a period of 60 months to Heartwood. Payments to Heartwood shall be principal and interest of $495.54 per month. Heartwood 88 LLC shall retain its liens on the above referenced real property and its right for tax deed sale relief in the event the Debtor fails to pay Heartwood in accordance with the terms of this Plan. Pursuant to the terms of a settlement agreement with the terms of this Plan. Pursuant to the terms of a settlement agreement between the Debtor and J Properties IV, LLC, the Debtor is consenting immediate foreclosure of the property located at 1310 N. Laura St. Any disposition of the property located at 1310 N. Laura St. will be subject to the tax certificate lien rights of Heartwood 88, LLC, and Heartwood 88, LLC shall retain its lien rights in the property, along with any and all rights and remedies on account of such lien rights, notwithstanding the Debtor's agreement with J Properties IV, LLC. Heartwood

10

shall make semi-annual reports to the Duval County Tax Collector regarding the amount of principal and interest that has been paid to Heartwood over the previous six month period. Heartwood agrees that its rights under the tax certificates are defined by this Plan and applicable Florida law. Upon payment in full from Debtor in accordance with the terms of this Plan, Heartwood shall notify the Tax Collector immediately, and the tax certificates and all rights thereunder shall become null and void and said tax certificates shall be considered full satisfied. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 25 Claim of Heartwood 88, LLC)* (Doc. No. 354) are incorporated by reference as though fully set forth herein.

s. **2.26 Class 26 – Secured Claim of Duval County Tax Collector on Debtor's Real Property.**

This class consists of the Secured Claim of the Duval County Tax Collector held by virtue of statutory liens on certain parcels of Debtor's real property located in Duval County, FL, and shall be subject to the following terms:

A. **Properties Covered.** The claim, and payment thereon, is limited to the "Subject" properties identified, and whose taxes are estimated, in the attached "Exhibit 2". All "other" properties that have been claimed upon or identified in this bankruptcy estate are either (1) being surrendered or (2) not in fact owned by the Debtor or a part of the bankruptcy estate. The Tax Collector is authorized to collect the taxes on any such "other" properties outside the Amended Plan of Reorganization by the Tax Collector, in accordance with state law

11

B. **Taxes, Interest and Fees Due.** The Debtor shall pay as to each "Subject" property, all taxes and fees due, and interest at either 18% or as provided for by law for tax certificates or tax deed applications.

C. **Date of Interest Accrual.** Interest shall accrue, and shall be paid, from date of delinquency of each tax bill.

D. **Amortization over Seven (7) Years.** Taxes and fees shall be totaled on each "Subject" property individually, and shall be amortized and paid with the appropriate interest, monthly over a seven year period.

E. **Default and Collection.** Upon the default or failure of the Debtor to timely pay any given "Subject" property's taxes, fees and interest, as set forth herein, the Debtor shall be deemed to be in default as to that property, and the Tax Collector may proceed to collect the whole of said sums due on that individual "Subject" property, outside the Amended Plan of Reorganization, in accordance with state law.

F. **Default Limited to Individual Property.** The Debtor's default or failure to timely pay any one "Subject" property's taxes, fees and interest, as set forth herein, shall not be deemed to be a default as to any other property.

G. **Prepayment.** The Debtor may prepay all or any portion of the taxes and fees as to any property at any time.

H. **Limitation on Tax Deed Sale.** So long as any given "Subject" property is not in default, as described above, said property shall not be sold at a tax deed sale.

t.  Class 28.5 – This is a "Contingent" Class consisting of the City of Jacksonville ("City"), which has filed a Proof of Claim relating to environmental damages for which the City alleges the Debtor and others may be liable. Class 28.5 is impaired by the Plan and therefore may vote on Plan approval. Class 28.5 is a "Contingent" class as the claim/liability must be established outside of the bankruptcy proceedings in a judicial forum of competent jurisdiction. Such claim shall be filed in a court of competent jurisdiction within 60 days of approval of the Plan. Notwithstanding any other provision of the Plan, no release approved in the Plan shall serve as a release of any obligation or liability owed to the city by any person or entity, as to the environmental claims of the City. Funds determined to be owed to Class 28.5, by way of judgment or settlement, shall be paid in the same manner as Class 28, except that the amount and duration of payments due the City shall be separately determined by the Court upon motion and hearing. Jurisdiction in the Bankruptcy Court is reserved for these purposes.

3.  The payments to each creditor are set forth on the payment schedule, pages 17-22 below.

4.  The Debtor shall continue to pay quarterly U.S. Trustee fees until such time as the case is converted, dismissed, discharged or a final decree is entered.

5.  After confirmation, pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5), the Debtor shall with the Bankruptcy Court and shall serve on the United States Trustee a financial or statement of disbursements for each quarter (or portion thereof) that this Chapter 11 case remains open, in a format prescribed by the United States Trustee. These reports shall include any disbursements made from the sale of any real property. Debtor shall also attach any

13

closing statements to the quarterly report.

6.      Within ten (10) days from the date of the entry of this Order, the Debtor-In-Possession shall transmit a copy of this Order and a copy of the Plan of Reorganization to all creditors and parties in interest.

7.      In accordance with § 1141(b) of the Bankruptcy Code and the Plan as modified, title to the Debtor's assets, shall vest in the Post-Confirmation Debtor on the Effective Date. Until the Effective Date, the Debtor shall continue to perform its duties under the Code. Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtor shall be vested in the Post-Confirmation Debtor, free and clear of all Liens, free and clear of all liens, claims, and interests of creditors.

8.      The Debtor is hereby authorized and directed to execute any necessary documents to meet the statutory requirements if any, for filing necessary papers with the State of Florida or any other jurisdiction to effectuate the terms of the Plan.

9.      Payment of all Allowed Claims of Professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order, unless other provisions have been made between the Professional and the Post-Confirmation Debtor.

10.     Upon the Effective Date, all executory contracts and unexpired leases of the Debtor not previously assumed or rejected by Order of this Court or subject to a pending motion to assume or reject shall be deemed assumed. Parties to such rejected leases and contracts are required to submit their claims for rejection damages, if any, pursuant to the provisions of 11 U.S.C. § 502(g), within thirty (30) days from entry of this Confirmation Order or such specific Order rejecting their lease or contract. All of the Debtor's right, title and interest in any contracts,

14

leases or agreements entered into by the Debtor after the Petition Date, and/or not subject to assumption or rejection under § 365 of the Bankruptcy Code, shall vest in the Post-Confirmation Debtor without further action on the Effective Date.

11.     The Post-Confirmation Debtor is hereby vested with the rights and powers granted to the Debtor pursuant to § 1107(a) of the Bankruptcy Code with respect to the allowance, treatment, or avoidance of Liens or Claims which remain unresolved as of the Effective Date.

12.     The Debtor/Post-Confirmation Debtor shall have ninety days (90) days from the Confirmation Date to commence any claims objections or commence any adversary proceeding ("Objection/Adversary Deadline"). The Debtor, upon motion and a hearing, may extend the Objection/Adversary Deadline.

13.     In accordance with §§ 524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order, on and after the Effective Date, all Persons are permanently enjoined and restrained from, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest, seeking to hold liable the Post-Confirmation Debtor or the property of Post-Confirmation Debtor, for any claim, obligation, right, interests, debt or liability that has been treated pursuant to the Plan and for any and all claims arising under bankruptcy or non-bankruptcy law relating in any way to the Debtor, the Post-Confirmation Debtor or their business, except for any claims or actions related to gross negligence or willful misconduct.

14.     Pursuant to § 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

15

with the Plan shall not be subject to any stamp, real estate transfer, or similar tax. All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

15.     All entities holding Claims against or Interests in the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

16.     In accordance with § 1142 of the Bankruptcy Code, the Debtor, the Post-Confirmation Debtor and any other entity designated pursuant to the Plan are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

17.     The Court shall retain jurisdiction for the sole purpose of determining the amount and duration of repayment of the contingent claim of the City of Jacksonville, if and when Debtor is found liable on account of such contingent claim, as outlined in the Class 28.5 Stipulation.

ORDERED this __29__ day of May, 2012 at Jacksonville, Florida.

_____
PAUL M. GLENN
United States Bankruptcy Judge

16