IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CIVIL ACTION NO.: 3:12-CV-850-J-25MCR

THE CITY OF JACKSONVILLE,
a State of Florida municipal corporation,

                    Plaintiff,

vs.

SHOPPES OF LAKESIDE, INC.
a Florida Corporation; and
JACKSONVILLE HOSPITALITY HOLDINGS L.P.,
a Delaware Limited Partnership,

                    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, the City of Jacksonville ("the City" or the "Plaintiff") hereby sues Jacksonville Hospitality Holdings L.P. ("JHH"), and Shoppes of Lakeside, LLC, ("Shoppes"), and alleges the following:

### STATEMENT OF THE CASE

1.      This is a civil action brought pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2), and pursuant to § 376.313, Florida Statutes ("F.S."). In this action, Plaintiff seeks to recover costs incurred and to be incurred by Plaintiff in response to releases or threatened releases of hazardous substances at or from the Main Street Manufactured Gas Plant ("MGP"), located in or about the intersection of Orange and Main Streets, Jacksonville, Duval County, Florida. In addition, Plaintiff seek damages from

Defendants pursuant to § 376.313, F.S. as a result of the release of pollutants on the Main Street

MGP site and/or adjacent properties, in violation of Florida's Water Quality Assurance Act, §§

376.30 - 376.317, F.S. (the "Act").

## PARTIES

2.      Plaintiff City is a municipal corporation and political subdivision of the State of

Florida, and is the owner of a parcel of real property located in the City of Jacksonville known as

Confederate Park.

3.      Defendant JHH is a Delaware limited partnership, and is the current owner of real

property located at 901 North Main Street, Jacksonville, Florida, upon which the Main Street

MGP formerly operated ("JHH Parcel").

4.      Defendant Shoppes of Lakeside, Inc. ("Shoppes"), is a Florida corporation, and is

the current owner of real property located at 937 North Main Street, Jacksonville, Florida

("Shoppes Parcel").[1]

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to Sections

107(a) and 113(b) of CERCLA, as amended, 42 U.S.C. §§ 9607(a) and 9613(b) and 28 U.S.C. §

1331 for claims arising under CERCLA, and pursuant to 28 U.S.C. § 1367 for the pendent state

law claim.

6.      A copy of this Amended Complaint immediately will be provided to the Attorney

General of the United States and to the Administrator of the United States Environmental

Protection Agency ("EPA") in accordance with 42 U.S.C. § 9613(l).

---

[1] Shoppes is the debtor in bankruptcy proceedings before the Middle District of Florida, Case No 3:10-bk-5199-PMG.  However, by Order entered on May 29, 2012, the Bankruptcy Court granted the City leave to file suit against Shoppes.  See **Exhibit A** Bankruptcy Order Confirming Reorganization Plan.

2

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and § 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances and pollutants that gave rise to these claims occurred in the Jacksonville Division of this District.

## STATUTORY BACKGROUND

8.    CERCLA was enacted in 1980 to provide a comprehensive mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related activities, which are known as "response" actions under Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

9.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --
(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person . . . at any facility . . . owned or operated by another party or entity and containing such hazardous substances
…
shall be liable for –

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; . . . .

10.    Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides:

"In any such action described in this subsection [an action for recovery of costs under § 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

3

## FACTUAL BACKGROUND

11.     The Florida Department of Environmental Protection ("FDEP") has identified 24 locations in Florida where former MGPs operated; one of those sites is the Main Street MGP site in Jacksonville, Florida.  It is believed that this MGP operated on the corner of Orange and Main Streets from the late-1800s to early 1900s.

12.     The address for the real property upon which the former Main Street MGP was located is 901 North Main Street, Jacksonville, Florida 32202, which is currently owned by JHH.

13.     Through a heating process, MGPs used coal or coke, steam and a gasification agent to produce a combustible gas for street lights, home lighting and stoves.   Waste products from MGP operations included tars, aqueous ammonical liquors, cyanide and heavy metals. Coal tar contains a number of volatile organic compounds (benzene, ethyl benzene, toluene and xylene, among other compounds) and polycyclic aromatic hydrocarbons (naphthalene, benzo(a)pyrene, and acenaphthene, among other compounds).  Historical accounts indicate that housekeeping practices at MGPs were very sloppy.  Tar and other waste products were often discharged directly to the ground and/or into nearby streams.  Many of the storage tanks were prone to leaks.  As a result, soil and groundwater contamination was fairly common at MGPs.

14.     From approximately 1874 until after the Main Street MGP was dismantled at some time after 1912, industrial waste containing "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and pollutants as defined in the Act, including but not limited to, benzene, and other volatile organic compounds, naphthalene, benzo(a)pyrene, acenaphthene, and other polycyclic aromatic hydrocarbons, and metals, including arsenic, were released and discharged into the environment at the JHH Parcel and the Shoppes Parcel, and have migrated onto property owned by the City, including Confederate Park, as well as right-of-

way properties owned by the City (collectively the "City's Property" or "Plaintiff's Property"). As a result of the release of hazardous substances and pollutants at or from the JHH Parcel and the Shoppes Parcel, and the subsequent migration of such hazardous substances and pollutants onto City's Property, the JHH Parcel, Shoppes Parcel, and Confederate Park constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

15.   The City became aware of the migration of hazardous substances and pollutants to soils and groundwater of City's Property in September 2001 through a Preliminary Contamination Assessment Report performed by Felicia M. Boyd & Associates, which described the results of sampling performed on soils and groundwater at Confederate Park.

16.   In March 2002, the City entered into a Consent Order with the Florida Department of Environmental Protection ("FDEP"), pursuant to which the City is obligated to assess the extent of environmental impacts on City's Property related to the former operation of the Main Street MGP and to prepare a feasibility study of potential remediation actions for the environmental impacts.  The City conducted numerous assessments from 2003 through 2011 and has incurred significant costs in doing so.  Such costs include the assessment of environmental impacts related to the former operation of the Main Street MGP on properties other than City's Property, including the JHH Parcel, Shoppes Parcel, and other properties.

17.   In the fall of 2009, FDEP sent a letter to EPA requesting designation of the Main Street Site as a Superfund Site under CERCLA and listing the site on the National Priorities list. The City continued to try to work with FDEP and urged EPA and FDEP to not list the Main Street MGP Site because doing so would dramatically increase the remediation expense and may adversely impact property values in the immediate vicinity.  Under extreme pressure from FDEP, the City made great efforts to try to encourage the Defendants, as potentially responsible parties

601733876                                    5

("PRPs"), to join in and conduct a holistic approach to the cleanup, since contamination originated and was present on the JHH Parcel and Shoppes Parcel and its continued existence would complicate the City's effort to respond to environmental impacts that had migrated onto City's Property.  In the summer and fall of 2011, the City conducted meetings, calls and communications with the Defendants to discuss contribution amounts and options for responding to the contamination issues.  Those negotiations were generally unsuccessful.

18.     Additionally, FDEP and/or EPA contacted the Defendants directly in an attempt to get them to begin assessing the extent of contamination and conduct remediation measures. To date, none of the Defendants has attempted to delineate or address the releases of hazardous substances and pollutants on the JHH Parcel and Shoppes Parcel.

19.     The City has suffered damages due to contamination that has and will continue to emanate from the JHH Parcel and Shoppes Parcel Properties and migrate onto City's Property.

20.     Furthermore, upon information and belief, previous releases of pollutants from storage tanks on the JHH Parcel and Shoppes Parcel have exacerbated and mobilized the MGP contamination, resulting in further environmental impacts to City's Property.

## COUNT I
## RECOVERY OF RESPONSE COSTS UNDER CERCLA §§ 107(a) AND 113(g)(2)

21.     The allegations of Paragraphs 1 through 20 of this Amended Complaint are incorporated by reference as if fully set forth herein.

22.     The JHH Parcel, Shoppes Parcel and City's Property are places where hazardous substances have been released or have come to be located and, therefore, are deemed a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

23.     Each Defendant is a "person" within the meaning of Section 101(21) and 107(a), CERCLA, 42 U.S.C. § 9601(21) and 9607(a).

24.     A "release" and/or "threatened release" of "hazardous substances" within the meaning of CERCLA occurred at the JHH Parcel and Shoppes Parcel.

25.     "Hazardous substances," within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been deposited, stored, disposed of, or placed, or otherwise come to be located on the JHH Parcel, Shoppes Parcel, and City's Property.

26.     The soils, groundwater, waterways, fish and other natural resources in and around the JHH Parcel, Shoppes Parcel, and City's Property constitute the "environment" as defined by Section 101(8) of CERCLA, 42 U.S.C. § 9601(8).

27.     There are and were within the meaning of Section 101(22) of CERLCA, 42 U.S.C. § 9601(22), one or more "releases" or threatened releases of hazardous substances into the environment at and from the JHH Parcel and Shoppes Parcel.

28.     As a result of the releases or threatened releases of hazardous substances at or from the JHH Parcel and the Shoppes Parcel, Plaintiff has incurred, and will continue to incur, response costs, within the meaning of Sections 101(25) and 107 of CERCLA, 42 U.S.C. §§ 9601(25) and 9607, to respond to such releases or threatened release of hazardous substances.

29.     The costs of response incurred by Plaintiff in connection with the release of hazardous substances have been and will continue to be consistent with the National Contingency Plan, within the meaning of Section 107(a)(4)(B) of CERLCA, 42 U.S.C. § 9607(a)(4)(B), including without limitation the costs that Plaintiff has expended on response costs for assessments and investigations as well as any future response costs that Plaintiff may pay for excavating soils, treating soils and groundwater and related administrative and oversight activities.

30.     Defendant JHH is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. §

9607(a)(1) as a current owner of the JHH Parcel.

31.     Defendant Shoppes is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1) as a current owner of the Shoppes Parcel.

32.     Shoppes and JHH are liable as the owner of property upon which a release of petroleum products occurred, the presence of which exacerbated the migration of MGP waste and has led to the further contamination of the City's Property.

33.     When the existence of MGP contamination was brought to the attention of the Defendants by the City, FDEP and/or EPA, Defendants failed to undertake any meaningful efforts to attempt to resolve the MGP contamination issues.

34.     Defendants have not exercised due care with respect to the hazardous substances released at the JHH Parcel and Shoppes Parcel, taking into consideration the characteristics of such hazardous substances, in light of all relevant facts and circumstances; nor have Defendants taken precautions against foreseeable acts or omission of any third party responsible for the releases of hazardous substances from the JHH Parcel and Shoppes Parcel and the consequences that could foreseeably result from such acts or omissions.

35.     Neither Defendant JHH nor Defendant Shoppes undertook any environmental due diligence prior to purchasing the JHH Parcel and Shoppes Parcel, respectively.

36.     The response costs and future response costs that Plaintiff has incurred and will continue to incur are and will be consistent with the National Contingency Plan, as described in Section 105 of CERCLA, 42 U.S.C. § 9605 and 40 C.F.R. Part 300.

37.     Pursuant to Section 107 of CERCLA, 42 U.SC. § 9607, Defendants are liable for an equitable share of the costs of responding to releases of hazardous substances from the JHH Parcel and the Shoppes Parcel.

601733876                                      8

38.     Pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, Plaintiff is entitled to recover from each Defendant their respective equitable shares of the response costs that Plaintiff has incurred in connection with the facility.

39.     Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2),  Plaintiff is entitled to a declaratory judgment that Defendants are liable for their respective equitable shares of the future response costs that Plaintiff incurs in connection with the facility.

WHEREFORE,  Plaintiff demands judgment in its favor against the Defendants as follows:

a. Enter judgment in favor of Plaintiff against Defendants, pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, finding Defendants liable for their respective equitable shares of past response costs incurred thus far in connection with the facility, including any orphan share, and any other recoverable costs, together with interest thereon and requiring Defendants to pay such costs to Plaintiff;

b. Enter a declaratory judgment in favor of Plaintiff against Defendants, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2),  finding Defendants liability for their respective equitable shares of all future response costs incurred by Plaintiff in connection with the facility, including any orphan share, and requiring Defendants to pay such costs to Plaintiff;

c. Enter judgment in favor of Plaintiff and against Defendants for all costs of this action, including interest, costs, and attorneys' fees allowed by law; and

d. Grant Plaintiff such other and further relief at law or in equity as may be justified by the evidence and the law and as this Court may deem just and

proper.

## COUNT II – SECTION 376.313, FLORIDA STATUTES

40.     The allegations of Paragraphs 1 through 39 of this Amended Complaint are incorporated by reference as if fully set forth herein.

41.     This is a pendent state law claim for damages in excess of $75,000.00, exclusive of fees, costs, and interest, incurred by Plaintiff as a result of Defendants' violations of Florida's Water Quality Assurance Act, §§ 376.30 – 376.317, F.S. (the "Act"), and as such, is within the jurisdiction of this Court.

42.     The Act prohibits such a discharge of "pollutants or hazardous substances into or upon the surface or ground waters of the state or lands, which discharge violates any departmental 'standard'." F.S. § 376.302(1)(a).

43.     Environmental assessments conducted by the City and others prove that there has been a "discharge or other condition of pollution" covered by Florida Statutes Sections 376.30-376.317.

44.     Section 376.313, Florida Statutes, authorizes the collection of damages for the pollution discharged onto Plaintiff's Property, as well as collection of attorney's fees and costs associated with bringing this action.

45.     In *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So.2d 20 (Fla. 2004), the Florida Supreme Court held that, according to the clear language of § 376.313, F.S., the Florida Legislature created a private, strict liability cause of action for damages arising in connection with the discharge of pollutants and hazardous substances in violation of the Act.

46.     As a result of Defendants' discharge and/or exacerbation of the discharge of pollutants and/or hazardous substances in violation of the Act, Plaintiff has suffered injury and

10

damages, including response costs, the costs of litigation and reasonable attorneys' fees.

47.     The injury to the City's Property is permanent or continuing and Plaintiff will continue to incur damages in the future as a result of Defendants' discharge of pollutants and/or hazardous substances in violation of the Act.

48.     Defendants' liability under the Act arises from the same nucleus of operative facts as does Defendants' liability under CERCLA as alleged above.

49.     It is not necessary for Plaintiff to plead or prove negligence in any form or manner but rather it need only prove the fact that the prohibited discharge or polluting condition has occurred.

50.     Plaintiff has engaged the firm of Baker & Hostetler LLP to represent Plaintiff's interests in this matter and Plaintiff has agreed to pay Baker & Hostetler LLP a reasonable fee for its services in this action.  In addition, Plaintiff has required the assistance of its in-house legal department, the Office of General Counsel, in connection with the representation of Plaintiff's interests in this matter, and is, therefore, entitled to recover a reasonable fee for such services.

WHEREFORE, Plaintiff demands judgment against the Defendants awarding the Plaintiff:

e.     Enter judgment in favor of Plaintiff against Defendants, pursuant to § 376.313, F.S, finding Defendants liable for damages, including each Defendant's respective equitable share of the past response costs incurred by Plaintiff and each Defendant's respective equitable share of future response costs to be incurred by Plaintiff in connection with the facility;

f.     Enter a judgment in favor of Plaintiff against Defendants, pursuant to §

376.313(6), F.S., finding that Plaintiff's efforts in expediting the prompt investigation of the facility justify an award for the costs of litigation, including reasonable attorneys' fees, as in the public interest; and

g.  Grant Plaintiff such other and further relief at law or in equity as may be justified by the evidence and the law and as this Court may deem just and proper.

**WHEREFORE,** the City demands a trial by jury on Count II and seeks judgment against Defendants for damages, costs, expenses, interest, attorney's fees, and all other relief the Court deems fair and appropriate.

Respectfully submitted this 16th day of November, 2012 by:

OFFICE OF GENERAL COUNSEL

s/ Michael B. Wedner
Michael B. Wedner (FL Bar No. 287431)
Deputy General Counsel
JASON R. TEAL (FL Bar No. 157198)
Assistant General Counsel
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Tel: 904-630-1834
mwedner@coj.net
jteal@coj.net

-and-

s/ William L. Pence
William L. Pence (FL Bar No. 298271)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Tel: 407-649-4095
wpence@bakerlaw.com
*Attorneys for Plaintiff*

601733876

12

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this 16th day of November, 2012, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notices of

electronic filing to the following:

James C. Rinaman, III & Associates, P.A.
1054 Kings Avenue
Jacksonville, FL  32207
*Attorney for Defendant Jacksonville Hospitality Holdings, L.P.*
JRinaman@Rinamanlaw.com

Daniel D. Richardson
Brenna M. Durden
James E. Charles
Lewis, Longman & Walker, P.A.
245 Riverside Avenue, Suite 150
Jacksonville, FL  32202
*Attorneys for Defendants Shoppes of Lakeside, Inc.*
drichardson@llw-law.com
bdurden@llw-law.com
jcharles@llw-law.com


 /s/Michael B. Wedner
Counsel for Plaintiff, the City of Jacksonville

601733876                                    13

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In Re:                                        Case No.: 3:10-bk-5199-PMG

SHOPPES OF LAKESIDE, INC.                     Chapter 11

    Debtor.

_____/

## ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION
## DATED APRIL 20, 2011

This case was before the Court on May 2, 2012 for the Confirmation Hearing on the Debtor's Chapter 11 Plan. The Amended Plan under Chapter 11 of the Bankruptcy Code dated April 20, 2011 (Docket #328), having been transmitted to creditors and equity security holders; and

It having been determined after hearing on notice that the requirements for Confirmation set forth in 11 U.S.C. § 1129(a) and (b) have been satisfied; it is

**ORDERED:**

1.     The Debtor's Amended Plan of Reorganization dated April 20, 2011, as modified, is confirmed. A copy of the Confirmed Plan is attached as Exhibit 1.

2.     The Plan is hereby amended as follows:

    a.   Class 3 second mortgage of Bisbee-Baldwin Corporation on 300 W. Adams St., Jacksonville FL to be paid its claim of $409,200 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 4.75%, interest adjustable bi-annually (January 1st and July 1st) at the Wall Street Journal prime rate plus 1.5%, with a floor of 4.75%. Based upon this treatment, the Debtor shall make an initial

1

payment of $2,644.35 on February 1, 2012. (ii) A balloon payment for the remaining balance shall be due on February 1, 2017. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 3 Claim of Bisbee-Baldwin)* (Doc. No. 453) are incorporated by reference as though fully set forth herein.

b.   Class 6 secured claim of HANCOCK BANK on 42 East Coast Drive, Atlantic Beach, FL 32233 paid in full from non-estate funds.

c.   Class 7 secured claim of HERITAGE BANK on 100 E. Adams a/k/a 123 N. Ocean St., Jacksonville FL to be paid as follows: (i) Payment of $19,044.53 to cure arrears for the two loans; (ii) Monthly payments beginning October 15, 2011 of principal and interest based upon a twenty-five (25) year amortization with interest of prime plus two percent (2%) adjusted annually, and a balloon payment for the remaining balance due five (5) years from the date of the first payment; (iii) Monthly payments shall be made as stated in paragraph (ii) above for fifty-nine (59) months based upon the treatment in paragraph (ii) above; The initial monthly payment is $2,100.45 based upon a twenty-five (25) year amortization of $347,889.94 with 5.25% interest. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 7 Claim of Heritage Bank)* (Doc. No. 388) are incorporated by reference as though fully set forth herein.

d.   Class 9 secured claim of Iberiabank on 1341 Pearl St. a/k/a 205 W. Third St., Jacksonville FL to be paid secured claim of $960,071.00 in full according to the Settlement Agreement dated October 31, 2011 (the "Settlement Agreement"), which

2

include, but are not limited to the following terms: (i) Monthly interest payments beginning October 15, 2011 in the amount of WSJ prime rate plus one percent. Such payments shall be made on the 15th day of each successive month until July 31, 2014, at which time all remaining sums of principal and interest due and owing shall be paid in full. (ii) Monthly principal payments in the amount of $5,305.50 beginning on October 15, 2011 and subsequent monthly principal payments in the same amount shall be made on the 15th day of each successive month until July 15, 2014. (iii) Assign to Iberiabank all right, title and interest to any and all insurance proceeds related to the fire at the Property on or about April 25, 2011. Any insurance funds paid to Shoppes and/or Chris Hionides with regard to the Property shall be paid to Iberiabank within twenty four (24) hours of receipt of same. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 9 Claim of IberiaBank)* (Doc. No. 456) are incorporated by reference as though fully set forth herein.

e.  Class 10 secured claim of Iberiabank on 233 W. Duval St., Jacksonville, FL (the "Property") to be paid secured claim of $3,877,210.88 in full according to the Settlement Agreement dated October 31, 2011 (the "Settlement Agreement"), which includes, but is not limited to, the following terms: (i) Monthly interest payments beginning October 15, 2011 in the amount of WSJ prime rate plus one percent. Such payments shall be made on the 15th day of each successive month until July 31, 2014, at which time all remaining sums of principal and interest due and owing shall be paid in full. (ii) Monthly principal payments in the amount of $21,694.50 beginning on October 15, 2011 and subsequent monthly principal payments in the same amount

shall be made on the 15th day of each successive month until July 31, 2014. The
remaining agreed Plan provisions as outlined in the Stipulation Regarding
Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 10
Claim of IberiaBank)* (Doc. No. 457) are incorporated by reference as though fully set
forth herein.

f.  Class 11 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest
to Jacksonville Bank, on 937 Main St., Jacksonville FL to be paid secured claim of
$727,978.04 in full according to the following terms: (i) Monthly payments for a
period of sixty (60) months according to a twenty-year amortization schedule with an
initial interest rate of 5.25%, interest adjustable bi-annually at the Wall Street Journal
prime rate plus 2.0%, with a floor of 5.25%. Based upon this treatment, the Debtor
shall make an initial payment of $4,935.14 on December 1, 2011. (ii) A balloon
payment for the remaining balance shall be due sixty (60) months from the date of the
first payment. The remaining agreed Plan provisions as outlined in the Stipulation
Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011
*(Class 11 Claim of ARS Investors)* (Doc. No. 431) are incorporated by reference as
though fully set forth herein.

g.  Class 12 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest
to Jacksonville Bank, on 300 W. Adams St., Jacksonville FL to be paid secured claim
of $3,502,221.57 in full according to the following terms: (i) Monthly payments for a
period of sixty (60) months according to a twenty-year amortization schedule with an
initial interest rate of 4.75 %, interest adjustable bi-annually at the Wall Street Journal
prime rate plus 1.5%, with a floor of 4.75%. Based upon this treatment, the Debtor

shall make an initial payment of $22,758.56 on December 1, 2011. (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 12 Claim of ARS Investors)* (Doc. No. 432) are incorporated by reference as though fully set forth herein.

h.  Class 13 secured claim of ARS INVESTORS I LP-2011-1 JAX, successor in interest to Jacksonville Bank, successor in interest to Oceanside Bank, on 520 N. Hogan St., Jacksonville FL to be paid secured claim of $368,671.27 in full according to the following terms: (i) Monthly payments for a period of sixty (60) months according to a twenty-year amortization schedule with an initial interest rate of 5.25 %, interest adjustable bi-annually at the Wall Street Journal prime rate plus 2.0%, with a floor of 5.25%. Based upon this treatment, the Debtor shall make an initial payment of $2,499.31 on December 1, 2011. (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 13 Claim of ARS Investors)* (Doc. No. 433) are incorporated by reference as though fully set forth herein.

i.  Class 14 secured claim of Putnam State Bank on 2440-2444 Mayport Rd., Atlantic Beach FL to be paid secured claim of $1,513,717.60 in full, plus attorney fees, according to the following terms: (i) Monthly payments of approximately $10,025.12 beginning April 15, 2012 and continuing for a period of sixty (60) months according

to a twenty-year amortization schedule with interest of 5.0%. (The amount of attorney fees needs to be finalized but have been estimated for purposes of calculating the estimated monthly payment); (ii) A balloon payment for the remaining balance shall be due sixty (60) months from the date of the first payment. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Chapter 11 Plan Between Debtor-in-Possession and Putnam State Bank (Doc. No. 460) are incorporated by reference as though fully set forth herein.

j.  Class 15 secured claim of SRB Servicing, LLC on 119 E. Forsyth St., Jacksonville FL to be paid secured claim of $502,212.45 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $3,009.50 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $39,162.84 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $743.55 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 15 Claim of SRB Servicing, LLC)* (Doc. No. 412) are incorporated by reference as though fully set forth herein.

k.  Class 16 secured claim of SRB Servicing, LLC on 231 E. Adams and 0 E. Adams, St., Jacksonville FL to be paid secured claim of $460,108.46 in full according to the

6

following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $2,757.19 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $37,354.73 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $709.22 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 16 Claim of SRB Servicing, LLC)* (Doc. No. 413) are incorporated by reference as though fully set forth herein.

l.  Class 17 secured claim of SRB Servicing, LLC on 211 E. Bay St., Jacksonville FL to be paid secured claim of $258,092.29 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $1,546.61 to commence December 15, 2011 with a balloon payment due on December 15, 2018. (ii) Creditor paid property taxes in the amount of $11,595.77 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $220.16 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in

7

the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 17 Claim of SRB Servicing, LLC)* (Doc. No. 414) are incorporated by reference as though fully set forth herein.

m. Class 18 secured claim of SRB Servicing, LLC on 1452 N. Main St. a/k/a 1440 N. Main St., Jacksonville FL to be paid secured claim of $168,237.69 in full according to the following terms: (i) Paid in full in Class 19. (ii) Creditor paid property taxes in the amount of $13,650.80 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly payments of $259.17 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 18 Claim of SRB Servicing, LLC)* (Doc. No. 415) are incorporated by reference as though fully set forth herein.

n. Class 19 secured claim of SRB Servicing, LLC on 30 W. 5th St. and 33 W. 4th St., Jacksonville FL to be paid secured claim of $168,237.69 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty-five (25) year amortization schedule with 5.25% interest, and a balloon payment for the remaining balance due eighty-four (84) months from the effective date of the Plan or the date of the first payment, whichever is earlier. Payments of $1,008.16 to commence December 15, 2011 with a balloon payment due on December 15, 2018. Creditor paid property taxes in the amount of $27,794.36 for tax years 2007 & 2008. Debtor will re-imburse creditor by repaying these advances over 60 months with 5.25% interest, in equal monthly installments. Monthly

8

payments of $527.70 to commence December 15, 2011. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 19 Claim of SRB Servicing, LLC)* (Doc. No. 416) are incorporated by reference as though fully set forth herein.

o. Class 20 secured claim of Vystar Credit Union on 1351 Silver Street, Jacksonville FL 32206 to be paid secured claim of $354,349.29 in full according to the following terms: (i) Monthly payments for a period of eighty-four (84) months according to a twenty (20) year amortization schedule with 5.5% interest. Monthly payments of principal and interest shall be $2,437.52 beginning March 1, 2012. (ii) A balloon payment for the remaining balance shall be due eighty-four (84) months from the date of the first payment. (iii) The terms of the underlying loan documents (as described more particularly in, and attached to, Proof of Claim 26 filed by Vystar dated October 18, 2010) not modified herein shall remain in full force and effect. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 20 Claim of Vystar Credit Union)* (Doc. No. 441) are incorporated by reference as though fully set forth herein.

p. Class 21 secured claim of J PROPERTIES IV, LLC, successor-in-interest to Vystar Credit Union, on 1310 N. Laura St., Jacksonville FL is treated as follows: (i) The Debtor consents to the entry of an order, substantially in the form attached as Exhibit A, granting the Motion for Relief from Stay and authorizing J Properties to file a foreclosure action as to the Property (the "Foreclosure Action"), which Order shall provide that it is not stayed pursuant to Rule 4001(a)(3), Federal Rules of Bankruptcy

9

Procedure; (ii) The Debtor will assert no defenses to the Foreclosure Action and consents to the immediate entry of a foreclosure judgment in the Foreclosure Action; (iii) The disposition of the Property through a foreclosure sale pursuant to the Foreclosure Action will satisfy the Judgment and Claim No. 27 and upon such disposition, J Properties will provide the Guarantors with a satisfaction of the Judgment; and (iv) Upon the disposition of the Property through a foreclosure sale, J Properties will withdraw its Motion to Dismiss.

q. Class 23 secured claim of Z-S GENERAL PARTNERSHIP on 233 W. Duval Street, Jacksonville FL paid in full from non-estate funds.

r. Class 25 secured claim of Heartwood 88, LLC on 1351 Silver St., 231 E. Adams, & 320 E. Adams St., Jacksonville FL to be paid secured claim of $25,631.56 in full together with interest at a rate of 6% in equal monthly installments over a period of 60 months to Heartwood. Payments to Heartwood shall be principal and interest of $495.54 per month. Heartwood 88 LLC shall retain its liens on the above referenced real property and its right for tax deed sale relief in the event the Debtor fails to pay Heartwood in accordance with the terms of this Plan. Pursuant to the terms of a settlement agreement with the terms of this Plan. Pursuant to the terms of a settlement agreement between the Debtor and J Properties IV, LLC, the Debtor is consenting immediate foreclosure of the property located at 1310 N. Laura St. Any disposition of the property located at 1310 N. Laura St. will be subject to the tax certificate lien rights of Heartwood 88, LLC, and Heartwood 88, LLC shall retain its lien rights in the property, along with any and all rights and remedies on account of such lien rights, notwithstanding the Debtor's agreement with J Properties IV, LLC. Heartwood

10

shall make semi-annual reports to the Duval County Tax Collector regarding the amount of principal and interest that has been paid to Heartwood over the previous six month period. Heartwood agrees that its rights under the tax certificates are defined by this Plan and applicable Florida law. Upon payment in full from Debtor in accordance with the terms of this Plan, Heartwood shall notify the Tax Collector immediately, and the tax certificates and all rights thereunder shall become null and void and said tax certificates shall be considered full satisfied. The remaining agreed Plan provisions as outlined in the Stipulation Regarding Amendment to Amended Plan of Reorganization Dated April 20, 2011 *(Class 25 Claim of Heartwood 88, LLC)* (Doc. No. 354) are incorporated by reference as though fully set forth herein.

s.  **2.26 Class 26 – Secured Claim of Duval County Tax Collector on Debtor's Real Property.**

This class consists of the Secured Claim of the Duval County Tax Collector held by virtue of statutory liens on certain parcels of Debtor's real property located in Duval County, FL, and shall be subject to the following terms:

A.  **Properties Covered.** The claim, and payment thereon, is limited to the "Subject" properties identified, and whose taxes are estimated, in the attached "Exhibit 2". All "other" properties that have been claimed upon or identified in this bankruptcy estate are either (1) being surrendered or (2) not in fact owned by the Debtor or a part of the bankruptcy estate. The Tax Collector is authorized to collect the taxes on any such "other" properties outside the Amended Plan of Reorganization by the Tax Collector, in accordance with state law

11

B. **Taxes, Interest and Fees Due.** The Debtor shall pay as to each "Subject" property, all taxes and fees due, and interest at either 18% or as provided for by law for tax certificates or tax deed applications.

C. **Date of Interest Accrual.** Interest shall accrue, and shall be paid, from date of delinquency of each tax bill.

D. **Amortization over Seven (7) Years.** Taxes and fees shall be totaled on each "Subject" property individually, and shall be amortized and paid with the appropriate interest, monthly over a seven year period.

E. **Default and Collection.** Upon the default or failure of the Debtor to timely pay any given "Subject" property's taxes, fees and interest, as set forth herein, the Debtor shall be deemed to be in default as to that property, and the Tax Collector may proceed to collect the whole of said sums due on that individual "Subject" property, outside the Amended Plan of Reorganization, in accordance with state law.

F. **Default Limited to Individual Property.** The Debtor's default or failure to timely pay any one "Subject" property's taxes, fees and interest, as set forth herein, shall not be deemed to be a default as to any other property.

G. **Prepayment.** The Debtor may prepay all or any portion of the taxes and fees as to any property at any time.

H. **Limitation on Tax Deed Sale.** So long as any given "Subject" property is not in default, as described above, said property shall not be sold at a tax deed sale.

t. Class 28.5 – This is a "Contingent" Class consisting of the City of Jacksonville ("City"), which has filed a Proof of Claim relating to environmental damages for which the City alleges the Debtor and others may be liable. Class 28.5 is impaired by the Plan and therefore may vote on Plan approval. Class 28.5 is a "Contingent" class as the claim/liability must be established outside of the bankruptcy proceedings in a judicial forum of competent jurisdiction. Such claim shall be filed in a court of competent jurisdiction within 60 days of approval of the Plan. Notwithstanding any other provision of the Plan, no release approved in the Plan shall serve as a release of any obligation or liability owed to the city by any person or entity, as to the environmental claims of the City. Funds determined to be owed to Class 28.5, by way of judgment or settlement, shall be paid in the same manner as Class 28, except that the amount and duration of payments due the City shall be separately determined by the Court upon motion and hearing. Jurisdiction in the Bankruptcy Court is reserved for these purposes.

3. The payments to each creditor are set forth on the payment schedule, pages 17-22 below.

4. The Debtor shall continue to pay quarterly U.S. Trustee fees until such time as the case is converted, dismissed, discharged or a final decree is entered.

5. After confirmation, pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5), the Debtor shall with the Bankruptcy Court and shall serve on the United States Trustee a financial or statement of disbursements for each quarter (or portion thereof) that this Chapter 11 case remains open, in a format prescribed by the United States Trustee. These reports shall include any disbursements made from the sale of any real property. Debtor shall also attach any

13

closing statements to the quarterly report.

6.     Within ten (10) days from the date of the entry of this Order, the Debtor-In-Possession shall transmit a copy of this Order and a copy of the Plan of Reorganization to all creditors and parties in interest.

7.     In accordance with § 1141(b) of the Bankruptcy Code and the Plan as modified, title to the Debtor's assets, shall vest in the Post-Confirmation Debtor on the Effective Date. Until the Effective Date, the Debtor shall continue to perform its duties under the Code. Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtor shall be vested in the Post-Confirmation Debtor, free and clear of all Liens, free and clear of all liens, claims, and interests of creditors.

8.     The Debtor is hereby authorized and directed to execute any necessary documents to meet the statutory requirements if any, for filing necessary papers with the State of Florida or any other jurisdiction to effectuate the terms of the Plan.

9.     Payment of all Allowed Claims of Professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order, unless other provisions have been made between the Professional and the Post-Confirmation Debtor.

10.     Upon the Effective Date, all executory contracts and unexpired leases of the Debtor not previously assumed or rejected by Order of this Court or subject to a pending motion to assume or reject shall be deemed assumed. Parties to such rejected leases and contracts are required to submit their claims for rejection damages, if any, pursuant to the provisions of 11 U.S.C. § 502(g), within thirty (30) days from entry of this Confirmation Order or such specific Order rejecting their lease or contract. All of the Debtor's right, title and interest in any contracts,

leases or agreements entered into by the Debtor after the Petition Date, and/or not subject to assumption or rejection under § 365 of the Bankruptcy Code, shall vest in the Post-Confirmation Debtor without further action on the Effective Date.

11.    The Post-Confirmation Debtor is hereby vested with the rights and powers granted to the Debtor pursuant to § 1107(a) of the Bankruptcy Code with respect to the allowance, treatment, or avoidance of Liens or Claims which remain unresolved as of the Effective Date.

12.    The Debtor/Post-Confirmation Debtor shall have ninety days (90) days from the Confirmation Date to commence any claims objections or commence any adversary proceeding ("Objection/Adversary Deadline"). The Debtor, upon motion and a hearing, may extend the Objection/Adversary Deadline.

13.    In accordance with §§ 524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order, on and after the Effective Date, all Persons are permanently enjoined and restrained from, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest, seeking to hold liable the Post-Confirmation Debtor or the property of Post-Confirmation Debtor, for any claim, obligation, right, interests, debt or liability that has been treated pursuant to the Plan and for any and all claims arising under bankruptcy or non-bankruptcy law relating in any way to the Debtor, the Post-Confirmation Debtor or their business, except for any claims or actions related to gross negligence or willful misconduct.

14.    Pursuant to § 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

with the Plan shall not be subject to any stamp, real estate transfer, or similar tax. All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

15. All entities holding Claims against or Interests in the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

16. In accordance with § 1142 of the Bankruptcy Code, the Debtor, the Post-Confirmation Debtor and any other entity designated pursuant to the Plan are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

17. The Court shall retain jurisdiction for the sole purpose of determining the amount and duration of repayment of the contingent claim of the City of Jacksonville, if and when Debtor is found liable on account of such contingent claim, as outlined in the Class 28.5 Stipulation.

ORDERED this _29_ day of May, 2012 at Jacksonville, Florida.


PAUL M. GLENN
United States Bankruptcy Judge