UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE CITY OF JACKSONVILLE, a State of
Florida municipal corporation,

    Plaintiff,

v.                                                                           CASE NO. 3:12-cv-850-J-25MCR

SHOPPES OF LAKESIDE, INC., a Florida
corporation; JACKSONVILLE HOSPITALITY
HOLDINGS L.P., a Delaware limited partnership;
CONTINENTAL HOLDINGS, INC., a Wyoming
corporation,

    Defendants,
_____

CONTINENTAL HOLDINGS, INC,

    Counter Claimant,
v.

THE CITY OF JACKSONVILLE,

    Counter Defendant,
_____

CONTINENTAL HOLDINGS, INC.,

    Third-Party Plaintiff,

v.

HOUSTON PIPE LINE COMPANY, L.P.;
HPL GP, LLC; GREIF, INC.; CLAUDE
NOLAN CADILLAC, INC.; JEA f/k/a Jacksonville
Electric Authority; and TEXACO, INC.,

    Third-Party Defendants,
_____

HOUSTON PIPE LINE COMPANY, L.P.,

    Counter Claimant,

v.

CONTINENTAL HOLDINGS, INC.,

    Counter Defendant,
_____

HPL GP, LLC,

    Counter Claimant,

v.

CONTINENTAL HOLDINGS, INC.,

    Counter Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Joint Motion of the City of Jacksonville, JEA, Houston Pipe Line Company, L.P., and HPL GP, LLC to Compel the Production of Certain Documents Requested by Subpoena to David Isabel and Withheld from Production by Continental Holdings, Inc. and to Compel the Continued Deposition Testimony as to Those Documents and Memorandum of Law ("Joint Motion to Compel") (Doc. 196); Continental Holdings, Inc.'s: (I) Response to Joint Motion to Compel, (II) Motion for Protective Order or, in the Alternative, *In Camera* Inspection ("Motion for Protective Oder or *In Camera* Inspection"), and (III) Incorporated Memorandum of Law (Doc. 200); Houston

2

Pipe Line Company, L.P. and HPL GP, LLC's Response to Continental Holdings, Inc.'s Motion for Protective Order or *In Camera* Inspection (Doc. 201); and the City of Jacksonville and JEA's Notice of Joinder in Houston Pipe Line Company, L.P. and HPL GP, LLC's Response to Continental Holdings, Inc.'s Motion for Protective Order or *In Camera* Inspection (Doc. 205).

## I.   Introduction

This action is brought pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2), and pursuant to Florida's Water Quality Assurance Act, Fla. Stat. §§ 376.30–376.317.  (Doc. 87, ¶¶ 1, 3.) Plaintiff, the City of Jacksonville, seeks to recover its costs in response to releases, or threatened releases, of hazardous substances from the Main Street Manufactured Gas Plant ("Main Street MGP"), located at the intersection of Orange and Main Streets, Jacksonville, Duval County, Florida.[1]  (*Id.* at ¶ 2.)  The City of Jacksonville alleges that Defendant Continental Holdings, Inc. ("CHI") "is the successor in interest to Jacksonville Gas Company, the owner and operator of the Main Street MGP during its entire operating history, from approximately 1874 to approximately 1912."  (*Id.* at ¶ 7; *see also id.* at ¶ 31, ¶ 39 ("Through a series of name changes, assumptions of liabilities, and corporate transactions,

---

[1] The address of the Main Street MGP is 901 North Main Street, Jacksonville, Florida 32202, and this real property is currently owned by Defendant Jacksonville Hospitality Holdings L.P. ("JHH").  (Doc. 87, ¶ 15.)

3

Defendant CHI is the corporate successor to, and is obligated for the liabilities of, Jacksonville Gas Company, formerly known as The Citizens Gas Company, The Citizens Gas and Electric Company, and The Citizens Gas Light Company."), ¶ 48.)

From approximately 1874 until after the Main Street MGP was dismantled (some time after 1912), industrial waste containing hazardous substances and pollutants was released into the environment at the parcels of Defendants JHH and the Shoppes of Lakeside, Inc. ("Shoppes").[2]  (*Id.* at ¶ 21.)  The hazardous substances and pollutants have allegedly migrated onto property owned by the City of Jacksonville, including Confederate Park.  (*Id.* at ¶ 22.)  From 2003 through 2011, the City of Jacksonville allegedly "has incurred significant costs for the assessment of environmental impacts related to the former operation of the Main Street MGP on City's property, the JHH Parcel, the Shoppes Parcel, and other properties."  (*Id.* at ¶ 26.)  Through this lawsuit, the City of Jacksonville is attempting to recover from Defendants CHI, Shoppes, and JHH, its past and future costs of responding to releases of hazardous substances.  (*Id.* at ¶¶ 58-60.)  Specifically, Plaintiff alleges that CHI is liable as the corporate successor to Jacksonville Gas Company, which owned or operated the Main Street MGP at the time of the release or disposal of hazardous substances on the JHH Parcel and

---

[2] Defendant Shoppes is the current owner of real property located at 937 North Main Street, Jacksonville, Florida, upon which the Main Street MGP formerly operated. (Doc. 87, ¶ 6.)

adjacent properties.  (*Id.* at ¶ 48.)  Defendants Shoppes and JHH are allegedly "liable as the owners of property upon which a release of petroleum products occurred, the presence of which exacerbated the migration of MGP waste and has led to the further contamination of the City's Property."  (*Id.* at ¶ 52.)

## II.   Discussion

Plaintiff, the City of Jacksonville, and Third-Party Defendants, JEA, Houston Pipe Line Company, L.P., and HPL GP, LLC,[3] seek to compel CHI to produce certain documents requested by a December 14, 2015 subpoena duces tecum issued by the City of Jacksonville to David Isabel, as well as the continued deposition testimony of Mr. Isabel as to these documents.[4]  (Doc. 196 at 2.)  Pursuant to the subpoena, Mr. Isabel was required to bring to his deposition the following:

> All communications between you and/or your firm ("you") and any insurance company wherein you tendered claims for coverage for

---

[3] As the subpoena was issued by the City of Jacksonville, CHI argues that JEA, Houston Pipe Line Company, L.P, and HPL GP do not have standing to bring the Joint Motion to Compel.  (Doc. 200 at 11.)  However, even if JEA, Houston Pipe Line Company, L.P, and HPL GP do not have standing to bring the Joint Motion to Compel, the City of Jacksonville clearly has standing because it issued the subpoena.  CHI does not dispute the City of Jacksonville's standing.  (*Id.* at 12.)

Further, as stated in the Response to CHI's Motion for Protective Order or *In Camera* Inspection (Doc. 201), regardless of any standing issues regarding the Joint Motion to Compel, Third-Party Defendant Houston Pipe Line Company has standing to object to CHI's Motion for Protective Order or *In Camera* Inspection (*id.* at 3).  As the Motion for Protective Order or *In Camera* Inspection involves the same issues as the Joint Motion to Compel, the Court will resolve these issues without separately addressing each motion in its analysis.

[4] Mr. Isabel's deposition occurred on January 5, 2016.  (Doc. 196-3 at 2.)

> environmental damages being made against Continental Holdings, Inc. ("CHI") because of its acquisition of Florida Gas Company ("FGC") in 1979, specifically the following: (i) the initial claims letters; (ii) any responses received by you from the insurance company(ies) in which the insurance company(ies) requested information relating to the acquisition of FGC by CHI; (iii) any responses that you provided to the insurance company(ies) regarding the relationship between FGC and CHI as a corporate successor to FGC; and (iv) any communications from the insurance company(ies) in which the insurance company(ies) acknowledged that CHI is a successor to FGC and may be entitled to insurance coverage under certain policies issued to FGC by the insurance company(ies).
>
> The production requested expressly excludes any communications between you and any insurance company(ies) which relate to settlement negotiations and/or the ultimate resolution of the claims tendered on behalf of CHI to the insurance company(ies).

(Doc. 196-1 at 6.)

CHI responded to the subpoena, objecting to certain documents, producing other documents, and serving a privilege log.[5] (Doc. 197-2 at 2.) The most recent privilege log provided to the Court lists fourteen documents, thirteen of which CHI has withheld solely based on "FRE 408 Settlement Privilege."[6] (Doc.

---

[5] Also, at Mr. Isabel's deposition, CHI made the following standing objection:
   Mr. Isabel and CHI object to the admissibility of any of his testimony or any of the documents that have been produced pursuant to Federal Rule of Evidence 408 because all of this is in the context of settlement discussions with insurers of Florida Gas Company that resulted in a three-way settlement between Peoples Gas System and Continental Holdings, Incorporated. We are presenting Mr. Isabel for deposition and produced the documents subject to that objection.
(Doc. 196-3 at 3.)

[6] The only other document, which is listed in the privilege log as protected by both "FRE 408 Settlement Privilege" and the attorney-client privilege, is not at issue here because Plaintiff and the Third-Party Defendants are not seeking to compel the
(continued...)

197-4.)  Only these thirteen documents are at issue here.  Plaintiff and the Third-Party Defendants argue that the subject documents are not Rule 408 communications, but even if they were, their production would not be prohibited by Fed.R.Evid. 408, which merely addresses the admissibility of settlement negotiations and the like into evidence, whereas the scope of discovery is governed solely by the Federal Rules of Civil Procedure.  (Doc. 196 at 2.)

CHI objects to production of the documents requested by the subpoena to Mr. Isabel and to Mr. Isabel's continued deposition testimony relating to those documents, and, in turn, seeks a protective order or, alternatively, an *in camera* inspection of the documents withheld on the basis of FRE 408 Settlement Privilege.  (*See* Doc. 200.)  CHI argues that Mr. Isabel's subpoena expressly excluded the documents and testimony that are the subject of the Joint Motion to Compel.  (*Id.*)  CHI also argues that even if the documents on the privilege log do not fall squarely within the express exclusion of the subpoena, Plaintiff has failed to make a particularized showing that they will lead to discovery of admissible evidence.  (*Id.*)

Upon an *in camera* inspection of the subject documents, a review of the third amended privilege log, and the applicable law, the Court does not believe that the subpoena expressly excludes the documents and testimony that are the

---

[6](...continued)
production of this document or Mr. Isabel's testimony regarding this document.

subject of the Joint Motion to Compel.  Further, the Court agrees with Plaintiff and the Third-Party Defendants that many, if not all, of the documents withheld do not constitute Rule 408 communications; rather, they contain basic information regarding CHI's claims for insurance coverage and provide requested information regarding CHI's relationship to Florida Gas Company at a time when the insurance companies had not even indicated that there was any coverage dispute.  (Doc. 201 at 3; Doc. 205.)  Although many of the documents are marked as confidential settlement documents, they merely provide requested information regarding CHI's relationship to Florida Gas Company or an estimate of costs. These documents do not appear to reflect confidential settlement discussions with insurers.  Even assuming that the documents relate to confidential settlement discussions, their discovery would not be precluded by Federal Rule of Evidence 408.

Federal Rule of Evidence 408 governs the admissibility of evidence, but "does not bar discovery of information concerning a settlement."  *Cherestal v. Sears Roebuck & Co.*, 2013 WL 5305671, *3 (M.D. Fla. Sept. 20, 2013) (citing *U.S. ex rel. RMP Capital Corp. v. Turner Constr. Co.*, 2012 WL 6552063, *3 (M.D. Fla. Dec. 14, 2012)); *see also In re Denture Cream Prods. Liab. Litig.*, 2011 WL 1979666, *4 (S.D. Fla. May 2, 2011) (finding that mediation and settlement documents that could be relevant or lead to the discovery of relevant evidence are discoverable under Fed.R.Civ.P. 26 and noting that "Federal Rule of

Evidence 408 clearly only limits the use of such evidence at trial when it is offered to prove liability"). As the court stated in *Jeld-Wen, Inc. v. Nebula Glass International, Inc.*:

> The Defendants' argument that a heightened standard of relevance should be applied when it comes to production of a settlement agreement in discovery is rejected. That argument is not supported by any binding or persuasive authority in this Circuit, and moreover it is simply wrong. There is nothing magical about a settlement agreement. It ultimately is just a contract between two parties. No other contract enjoys the type of "heightened" protection that the Defendants require, and they do not explain just exactly why this type of contract merits such treatment. Rule 26 has no exception for settlement agreements. . . . There is at least a good faith basis here to argue that the settlement agreement *may* be admissible at trial. That fact entitles Jeld-Wen to production of potentially relevant evidence, whether or not the document is actually admitted at trial.

2007 WL 1526649, *3 (S.D. Fla. May 22, 2007).

CHI argues that the City of Jacksonville was required to make a particularized showing that the requested documents and testimony would lead to discovery of admissible evidence, pursuant to *Reist v. Source Interlink Cos., Inc.*, 2010 WL 4940096 (M.D. Fla. Nov. 29, 2010). In *Reist*, the court stated:

> Even though the information subject to discovery does not have to be admissible, there does need to be some factual probability it will lead to admissible evidence. Although not directly applicable to discovery, Rule 408 makes it unlikely information about prior settlements will lead to the discovery of admissible evidence. *Shipes v. BIC Corp.*, 154 F.R.[D.] 301, 309 (M.D. Ga. 1994). When a discovery request is seeking inadmissible evidence, as is the case before this Court, many courts shift the burden to the requesting party, requiring them to make a particularized showing that the inadmissible evidence is likely to lead to admissible evidence. This Court agrees that if a discovery request is seeking information

> subject to the exclusion under the Federal Rules of Evidence, such as settlement information, then the burden shift to the party seeking discovery, requiring them to make a particularized showing of likelihood that admissible evidence will be generated. . . . The Plaintiff has not made any particularized showing to convince the Court that admissible evidence would result from the discovery of the settlement information.  Further, the Plaintiff has not given a factual basis, nor a particularized showing, of the relevance of information regarding the terms of a settlement.

2010 WL 4940096 at *2.

*Reist* does not preclude the discovery sought in this case.  First, *Reist* is an unpublished decision that predates the current version of Rule 26, Fed.R.Civ.P. Rule 26, as amended on December 1, 2015, sets forth the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable*.

Fed.R.Civ.P. 26(b)(1) (emphasis added).  As stated recently in *Arcelormittal Indiana Harbor LLC v. Amex Nooter, LLC*, "Rule 26(b)(1) expressly provides that evidence need not be admissible to be discoverable.  The only question then is whether the discovery sought meets the standard set out in Rule 26(b)(1) for relevance and proportionality."  2016 U.S. Dist. LEXIS 18211, *16 (N.D. Ind. Feb. 16, 2016).

Plaintiff and the Third-Party Defendants have adequately shown the relevance of the requested information "to one of the principle issues in this action, whether CHI is the corporate successor to Florida Gas Company." (Doc. 196 at 10.)  As stated in the Joint Motion:

> [T]he information requested in the Subpoena is not being sought for purposes of determining whether the insurance companies had liability.  Rather, these communications are being sought for purposes of illuminating the relationship between Florida Gas Company and CHI.  To the extent that CHI made any representations or admissions in those communications that certain documents provide evidence that CHI *is a successor to Florida Gas Company*, those documents would be directly relevant to the pending action, in which CHI now denies that it is the corporate successor to Florida Gas Company.[7]  As noted below, the documents are also relevant to impeach sworn testimony from CHI representatives [that CHI has 'never admitted' that it is the corporate successor of Florida Gas Company].

(*Id.* at 10, 12 (emphasis in original).)  In addition, "information related to the submission and resolution of CHI's insurance claims is relevant to determining whether CHI has mitigated its alleged damages in the present case." (Doc. 201 at 3.)

In light of the foregoing, the Court finds that the requested information is "relevant to any party's claim or defense."  This is what the current version of

---

[7] Mr. Isabel's Affidavit provides that CHI's claims for coverage were based "solely on its alleged status as a corporate successor to the Florida Gas Company because of a 1979 transaction between Florida Gas Company and an entity called Continental Merger Subsidiary." (Doc. 198 at 2.)

11

Rule 26 requires.[8]  Therefore, CHI will be directed to produce the documents, requested by the December 14, 2015 subpoena but withheld on the basis of FRE 408 Settlement Privilege, and to coordinate the continued deposition testimony of Mr. Isabel as to these documents.  To the extent Plaintiff and the Third-Party Defendants request to be reimbursed by CHI for "all of their associated costs returning for the deposition of Mr. Isabel as to these initially withheld documents" (Doc. 196 at 14), this request is denied without prejudice to refiling, if necessary, upon completion of discovery.

Accordingly, it is **ORDERED**:

1.  The Joint Motion to Compel (**Doc. 196**) is **GRANTED in part** and **DENIED without prejudice in part**.[9]  The Joint Motion to Compel is granted to the extent that **within five (5) days** of the date of this Order, CHI shall produce the documents requested by the December 14, 2015 subpoena but withheld on the basis of FRE 408 Settlement Privilege and shall coordinate a mutually agreeable date for Mr. Isabel's continued deposition testimony, limited to three hours, as to these documents.  The Joint Motion to Compel is **DENIED without**

---

[8] The parties have not briefed how the issue of proportionality may affect the Court's analysis; however, as in *Arcelormittal Indiana*, the Court sees no reason to limit discovery on its own under Rule 26(b)(2)(iii) based on the arguments and information that have been presented.  2016 U.S. Dist. LEXIS 18211 at *18.

[9] The Court finds that CHI's objection was substantially justified; therefore, an award of expenses to Plaintiff and the Third-Party Defendants is not appropriate.  *See* Fed.R.Civ.P. 37(a)(5)(A).

**prejudice** to the extent it seeks reimbursement of costs for Mr. Isabel's continued deposition.

2. Continental Holdings, Inc.'s Motion for Protective Oder or *In Camera* Inspection (**Doc. 200**) is **GRANTED** only to the extent that it seeks an *in camera* inspection, and **DENIED** in all other respects.

**DONE AND ORDERED** at Jacksonville, Florida, on June 23, 2016.

*/s/ Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record