UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**THE CITY OF JACKSONVILLE**, a State of
Florida municipal corporation,
    Plaintiff,

v.

**SHOPPES OF LAKESIDE, INC.**, a Florida
corporation, *et al*,

    Defendants,
_____/

Case No. **3:12-cv-850-J-25MCR**

## ORDER

This Cause is before the Court upon Houston Pipe Line Company, L.P and HPL GP, LLC (collectively, Houston)'s Motion for Sanctions (Dkt. 285).

## Background

Plaintiff City of Jacksonville (Jacksonville or City) brings this case pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9607 and 9613(g)(2), as well as § 376.313, Florida Statutes (Dkt. 87).

The City seeks to recover its costs in response to releases, or threatened releases, of hazardous substances at or from the Main Street Manufactured Gas Plant (Gas Plant).

The City alleges that Defendant Continental Holdings, Inc. (Continental) is the successor in interest to the owner and operator of the Gas Plant during its entire operating history, from approximately 1874 to approximately 1912. The Second

1

Amended Complaint (Complaint) alleges that the hazardous substances at issue have migrated onto property owned by the City, including Confederate Park.

Defendants Shoppes of Lakeside, Inc. (Shoppes) and Jacksonville Hospitality Holdings L.P. (Jacksonville Hospitality) are allegedly "liable as the owners of property upon which a release of petroleum products occurred, the presence of which exacerbated the migration of [Gas Plant] waste and has led to the further contamination of the City's Property."

Houston's instant motion argues that the Court should sanction Continental pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, requiring Continental to pay its fees and costs incurred in defending against Continental's Third Party Complaint. Houston asserts that Continental's claim against Houston asserting that Houston is the successor to Jacksonville Gas Company (Jacksonville Gas) directly contradicts its prior acknowledgments that it is indeed the relevant successor in interest.

**Standard**

28 U.S.C. § 1927 provides, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so *multiplies* the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" (emphasis added). The Court also has the inherent authority to sanction litigants. However, "[i]nvocation of a court's inherent

power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995).[1]

**Analysis**

Houston's colorful pleading asserts:

> This Motion arises out of an egregious abuse of the litigation process by Continental and its counsel, forcing Houston Pipe Line to defend against a claim that Continental and its counsel had no basis for asserting in the first place, and exacerbated by Continental's litigation tactics designed to prevent their misconduct from seeing the light of day.
>
> Although one would not know it from the third party complaint, for more than a decade, Continental urged insurers and other courts that it is the successor-in-interest to the Florida Gas Company ("Florida Gas" or "Florida Gas Company"). It did so to obtain millions of dollars from Florida Gas' insurers to settle environmental claims predicated on the liability of Florida Gas' successor. In this case, however, Continental ignores—and indeed actively endeavored to conceal—this long history, and asserts a single claim against Houston Pipe Line that directly contradicts its prior claims. Now, Continental alleges that Houston Pipe Line is the true successor to Florida Gas (or maybe, Continental has recently claimed, it is EOG Resources). Even more troubling, when Houston Pipe Line sought discovery about Continental's earlier representations, Continental resisted any and all discovery that threatened to reveal its deception, instructing witnesses not to answer questions in depositions, refusing to produce documents, and only providing the information after a court order granting a motion to compel....Continental's allegations against Houston Pipe Line are based entirely on a transaction that it undertook in 1984, of which it was well aware throughout the time it was proclaiming it was Florida Gas' successor...

To support its argument that Continental repeatedly represented to insurance

---

[1] Internal citations and quotations are omitted in this Order.

companies that, as Florida Gas'[2] successor, it was entitled to collect on policies issued in the name of the Florida Gas Company to cover claims related to environmental contamination at various sites, Houston attaches various correspondence between Continental and several insurance companies. In the first set of letters, Continental provided notice to the insurers of "claims for environmental damages being made against Continental because of its acquisition of Florida Gas Company . . . in 1979." Continental asserted that it was "covered for such claims under . . . primary policies issued by [insurers] to Florida Gas." (Motion, Tab 1)

In follow up letters, the insurers asked Continental for documentation to support its claim to the proceeds and Continental provided same. In a June 29, 2005 letter to Hartford, for example, counsel for Continental provided 23 separate documents "in response to [Hartford's] request for historical corporate information regarding the relationship between Florida Gas Company . . . and Continental Holdings, Inc. . . . as a corporate successor to [Florida Gas Company]." Hartford also requested "cost documentation" related to Continental's claims. Continental's counsel responded that he would provide the requested information when "Hartford acknowledges that [Continental] is a successor to [Florida Gas] and may be entitled to insurance coverage under certain policies issued to [Florida Gas] by Hartford." (Motion, Tab 2)

Further, evidently in 2006 and 2007, Continental made separate presentations

---

[2] Jacksonville Gas Company eventually became the Florida Gas Company (Motion Tab 8, pps. 6-7, Nos. 24-26).

4

to AEGIS, Hartford, Zurich, One Beacon, and London Market insurers regarding this issue. (Motion, Tab 3) Continental's written presentations reflect that it explained to the insurers how it acquired Florida Gas. One page in the presentation stated that "Since Florida Gas is no longer operational, the Florida Gas liability share is a cumulation of liability apportioned to Continental Holdings and Peoples Gas." (*Id.*)

Further, Houston has provided settlement agreements between Continental and various insurers relating to the Florida Gas claims. The AEGIS agreement provided that Continental and Peoples Gas "represent and warrant that they (or one of them) have the authority as successors to or assigns of Florida Gas relating to the Sites owned or previously owned by Florida Gas to execute the releases contained herein." (Motion, Tab 5, p. 11)

Eventually, the insurers collectively paid Continental more than three million dollars and Continental agreed to indemnify the insurers regarding pollution claims relating to the relevant Florida Gas sites. (*Id.* at p. 8)

Beyond Continental's representations to the insurers, Houston points to a state court case, *Merco Group et al. v. Continental Holdings et al.*, wherein Continental's lawyer told the jury that Continental is "a former successor to the Florida Gas Company." (Motion, Tab 7 at pps. 84-85)

Lastly, Houston notes that "just a couple of months after [Continental] supposedly transferred its liabilities and ceased being the successor to Florida Gas, it engaged in another transaction (operating under the name KMI Continental, Inc.,

at the time), in which it issued a variety of stock certificates in which it consistently referred to itself as the 'successor in interest to Florida Gas Company.'" (Motion, Tab 9, p. 4)

In sum, Houston has provided sufficient documentation demonstrating that through the years, Continental represented it was the successor to Florida Gas.

Next, to support its argument that Continental unreasonably multiplied the proceedings in this case, Houston contends that "[Continental] vigorously opposed any effort by [it] to scrutinize or obtain discovery regarding [Continental's] past statements that it is Florida Gas' successor." Houston and the City filed a motion to compel forcing Continental to produce withheld documents and testimony related to the insurance settlements. The primary requests were granted by Magistrate Judge Richardson (Dkt. 243). Magistrate Judge Richardson also denied Continental's request for a protective order regarding the insurance settlement agreements, only granting Continental's request for an *in camera* inspection (Dkt. 251).

Lastly, Houston points out that in December of 2015, Continental proposed to dismiss Houston from this case only under the condition the dismissal was without prejudice. Houston resisted the attempt, requesting a dismissal with prejudice; the Court denied Continental's dismissal motion after a hearing.[3]

---

[3] Continental's response emphasizes that as early as November of 2015 it tried to voluntarily dismiss Houston, but Houston fought to stay in this action. However, the Court notes that Houston objected to the fact the proposed dismissal was without prejudice, arguing it would prejudice Houston because Continental could avoid an adverse determination in this case and then refile its

6

In sum, Houston argues that Continental multiplied the proceedings in this case unreasonably and vexatiously by frivolously asserting Houston was the successor-in-interest to Florida Gas despite its repeated contrary representations over several years in other forums.

Continental's opposition first appears to assert that it was forthcoming regarding the insurance documents; it notes that before Continental sued Houston, "the City's own pleadings disclosed the existence of these insurer settlements." Continental references a redacted letter attached to the City's Second Amended Complaint (Dkt. 52). However, the Court struck this complaint in March of 2015 and removed it from the record. This occurred prior to Continental filing its Third Party Complaint against Houston on April 6, 2015. Even if Houston had knowledge of the redacted letter, documentation and testimony regarding the insurance payments were of course the subject of discovery motions before the magistrate judge. Clearly, Continental resisted disclosure, arguing that many of the relevant documents related to confidential settlements.

Continental points out that even though Magistrate Judge Richardson overruled its disclosure objection, he stated that it was "substantially justified," and therefore denied Houston's request for fees. This determination does not bar Houston's sanctions request now that it has obtained the relevant documents.

---

claim in another case later. (Dkt. 190)

Next, Continental points out instances where it stated in the letters to the insurers that it was the "alleged successor [to Florida Gas]" rather than simply conceding it was the successor. Continental conveniently ignores the instances where it did indeed affirmatively assert that it was the successor.

Boldly, Continental also maintains that "the insurers settled with Continental and PGS in exchange for their indemnity, not because the insurers believed that either Continental or PGS were Florida Gas' successors." Evidently, Continental would have this Court believe that its representations and the documentation provided to the insurers were irrelevant to their decision to pay Continental a total of more than three million dollars.

Continental also argues that the settlements with the relevant insurers do not foreclose its right to seek a legal determination of who is liable as a successor to Florida Gas. While this assertion is technically true, the main issue before the Court is not simply whether there were settlement agreements between Continental and various insurance companies regarding the relevant claims. Instead, in reviewing the motion for sanctions, the Court considers, *inter alia*, Continental's prior representations and whether the filing of its Third Party Complaint against Houston was legally cognizable.

Lastly, Continental contends that Houston's allegation in its motion that Continental first identified non-party EOG as a potential successor in September 2016 is incorrect. The Court notes that whether this assertion is correct has little

bearing on whether Houston is entitled to sanctions. Indeed, the Court finds that Houston's motion is compelling and well supported.

In sum, the Court finds that Continental and its attorneys acted in bad faith and multiplied the proceedings in this case unreasonably and vexatiously; the Court grants the sanctions motion.

Accordingly, the Court finds that Houston is entitled to recover reasonable attorneys fees and costs from Continental and its attorneys incurred by Houston in defending against Continental's Third Party Complaint. The Court will request support regarding the amount of the award at a later date. Thus, is it **ORDERED**:

Houston Pipe Line Company, L.P and HPL GP, LLC (collectively, Houston)'s Motion for Sanctions (Dkt. 285) is **GRANTED**.

**DONE AND ORDERED** this 22nd day of September, 2017.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to:
Counsel of Record