UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE CITY OF JACKSONVILLE,

    Plaintiff,

v.                                                    Case No. 3:12-cv-850-HLA-MCR

SHOPPES OF LAKESIDE, INC., et al

    Defendants,

CONTINENTAL HOLDINGS, INC.

    Third Party Plaintiff,

v.

HOUSTON PIPE LINE COMPANY, L.P.,
HPL GP, LLC, and JEA f/k/a Jacksonville
Electric Authority

    Third Party Defendants.
_____/

**HOUSTON'S MOTION FOR ATTORNEYS' FEES AND COSTS
PURSUANT TO FLORIDA STATUTES § 376.313(6), MOTION TO DETERMINE
AMOUNT OF FEES AND COSTS PURSUANT TO PRIOR SANCTIONS ORDER,
AND SUPPORTING MEMORANDUM OF LAW**

Third Party Defendants Houston Pipe Line Company, L.P., and HPL GP, LLC (collectively, "Houston"), pursuant to Federal Rule of Civil Procedure 54, moves to tax attorney's fees and costs pursuant to the Court's prior Sanctions Order [Doc. 306] and as a prevailing party under Florida Statutes §376.313(6) (collectively, the "Motion"). Houston requests an Order awarding attorneys' fees and expenses, in the amount of $1,551,321.14 against Continental Holdings, Inc. ("Continental") and their attorneys, consistent with this Court's Order on Houston's Motion for Sanctions (the "Sanctions Order") [Doc. 306], Order Granting Houston's Motion for Summary Judgment (the "Summary Judgment

1

Order") [Doc. 315], and the corresponding judgment (the "Judgment") [Doc. 315]. In support of this Motion, Houston offers the following Memorandum of Law.

## INTRODUCTION

The background of this Motion is not new to the Court. The underlying litigation between Continental and Houston is extensively outlined both in the Sanctions Order and the Summary Judgment Order. As the Court has already found, Continental and its attorneys engaged in an egregious abuse of the litigation process against Houston, requiring Houston to defend against an objectively frivolous claim that Continental and its counsel brought and continued to pursue against Houston in bad faith.

Continental filed its Third-Party Complaint against Houston despite having successfully asserted to various insurance companies for more than a decade that Continental (rather than Houston) was the successor-in-interest to the Florida Gas Company. As this Court recited in the Sanctions Order, Continental obtained over $3,000,000.00 from insurance companies under policies issued to the Florida Gas Company, and then decided, after the insurance policies were exhausted, that Houston, rather than Continental, was the successor-in-interest. Not only did Continental bring its Third-Party Complaint against Houston in bad faith, but CHI also engaged in litigation tactics designed to run up legal fees and expenses for Houston in addition to the myriad of other tasks already necessary to defend this multi-million-dollar lawsuit *in which the remediation costs may be as high as $17 million*.

For example, Houston was forced to engage in extensive and significant discovery in this litigation, including, but not limited to, the following:

- **Fact Depositions.** Houston prepared for, took, or participated in approximately eighteen fact and corporate representative depositions, including of the following individuals (many over multiple days): Donald Burch, Neil Eckstein, Laurence

Eisenstein, Jeffrey Foster, Jason Hutchinson, David Isabel, Ronald Knorpp, Richard Lewis, John Marquardt, Jeremy Mathews, Joel McEachin, David Nakles, Josh Parker, Richard Rachal, Lou Soldano, Paul Steinbrecher, Scott Stout, and Gary Wealthall. Several of these depositions concerned Continental's claims about the successorship to the Florida Gas Company, and the historical corporate successorship going back to the original Jacksonville Gas Company. The other depositions principally concerned various environmental issues pertaining to the subject manufactured gas plant site, including causation and any necessary remediation.

- **Expert Discovery.** The parties collectively retained and prepared reports for eleven experts. Since January 2016, Houston retained three expert witnesses who served Rule 26 reports, including Richard Leisner, Thomas Sponsel, and Jay Vandeven. Houston also analyzed the expert reports prepared on behalf of the City of Jacksonville (John Beech, Andrew Brey, Scott Hempling, and David Riotte), and on behalf of Continental (Peter Alvey, Douglas Branson, Daniel Edelman and Lee S. Haramis), and further, participated in all expert depositions. Each of the above experts was deposed with the exception of Mr. Haramis. The above expert reports and depositions likewise concerned issues of corporate successorship and complicated environmental causation and remediation issues.

- **Extensive Written Discovery.** Among other discovery, Houston served on Continental at least four requests for production, one set of requests for admissions, and one set of interrogatories. Houston Pipe Line in turn responded to three requests for production, three sets of interrogatories, and one set of requests for admissions. The parties ultimately produced thousands of pages in documents in discovery, requiring extensive analysis and review.

Houston necessarily engaged in all of these activities in its defense of the Third-Party Complaint. Houston also incurred significant expense with regard to the following non-exhaustive list of motions:

- **Motion Practice Regarding Corporate Succession.** Throughout the pendency of this suit, Continental vigorously opposed any effort by Houston to scrutinize or obtain discovery regarding Continental's past statements on the subject of Florida Gas' successor. Houston first learned of Continental's prior admissions to insurance companies by obtaining documents from federal court filings in other matters in which Continental was alleged to be the corporate successor to the Florida Gas Company. Houston then requested early in 2016 that Continental provide documents related to this insurance coverage, including, but not limited to, correspondence by Continental with the insurers of the Florida Gas Company. [Doc. 243]. Continental initially opposed a joint motion to compel filed by the City and Houston seeking communications with insurers, claiming that these were "disputed" settlement communications. After Continental continued to assert these

3

baseless objections after depositions of its corporate representatives, Houston was forced to subpoena the relevant insurance companies. Before the companies could respond, Continental objected to the subpoenas and filed a Motion to Quash. [Doc. 239]. Ultimately, Magistrate Judge Richardson issued orders on June 23, 2016 [Doc. 243] and July 5, 2016 [Doc. 251], putting a stop to Continental's efforts at concealment, ordering the production of documents sought by Houston, noting that such documentation was not covered by any recognized privilege.

- **CHI's Motions to Dismiss Without Prejudice** In December, 2015, Continental first proposed to dismiss Houston from this action, without prejudice. Continental's effort was designed to permit it to continue to allege that Houston was the true successor to the Florida Gas Company, while denying Houston Pipeline the ability to participate in discovery and at trial to set the record straight, in both this litigation and any additional future litigation involving other contaminated sites. This unsuccessful effort required additional briefing, time, and expense on the part of Houston. At the same time that Houston filed its summary judgment motion discussed below, Continental filed its own motion for summary judgment, inventing an entirely new theory as to the "true" corporate successor to the Florida Gas Company, non-party EOG Resources, Inc. [Doc. 267]. Despite this newly found theory, Continental continued to refuse to dismiss Houston from the Third-Party Complaint with prejudice, instead moving again on September 30, 2016 to dismiss Houston without prejudice, requiring another response by Houston on the impropriety of such a motion. [*See* Doc. 282, 286]. ***Disturbingly, that same day, Continental's counsel informed the undersigned that Continental would only to agree to a dismissal with prejudice if Houston paid a settlement amount***.[1]

- **Motion for Summary Judgment and Amended Motion for Summary Judgment**. On September 1, 2016, Houston filed a motion for summary judgment seeking to definitively dismiss all of Continental's claims against Houston once and for all. [Doc. 265]. The motion for summary judgment was amended on March 27, 2017, after the receipt of additional (previously undisclosed) correspondence from

---

[1] From the good faith conference before filing this Motion, it is apparent that Continental and its counsel intend to argue once again that they did not engage in any sanctionable conduct, and that Continental should not have to pay any fees after any efforts to dismiss this litigation against Houston without prejudice. However, these arguments have now been litigated and rejected on three separate occasions: in the Sanctions Order, the order on Continental's Motion for Reconsideration, and in the Summary Judgment Order. As the Court noted in the Sanctions Order, "Houston objected to the fact that the proposed dismissal was without prejudice, arguing it would prejudice Houston because Continental could avoid an adverse determination in this case and then refile its claim in another case later. (Dkt. 190)." [Doc. 306, p. 6-7 n. 3]. The Court has twice now specifically agreed that dismissal without prejudice as requested by Continental is inappropriate, and denied Continental's motions to dismiss. [*See* Docs. 204 (denying first motion to dismiss), 294 (denying second motion to dismiss, and agreeing that Houston's objection is "well founded")]. Indeed, Continental's attempt to re-litigate these issues yet one more time simply confirms the necessity of a full award of attorneys' fees and costs incurred by Houston for the entirety of this unreasonably initiated and protracted litigation under 28 U.S.C. § 1927, the Court's inherent authority, and Florida Statutes § 376.313(6).

4

an insurance company reflecting that Continental had invoked its successor status as the successor to the Florida Gas Company to collect substantial sums of money for environmental contamination. [Doc. 299]. This necessitated additional briefing and supplementation of the record, again requiring Houston to incur additional legal fees and expenses in finally bringing this matter to conclusion with a determination on Continental's successor status that Continental and its lawyers knew all along. [*See, e.g.* Docs. 274, 292]. ***Houston's amended summary judgment motion, prepared and filed after the close of all of the discovery referenced above, was ultimately successful, resulting in the entry of the Summary Judgment Order and corresponding Judgment.***

- **Motion for Sanctions and Motion for Reconsideration of Sanctions Order.** Finally, as addressed in the Sanctions Order, Continental's bad faith initiation and continuation of the litigation in violation of Federal Rule of Civil Procedure 11, and 28 U.S.C. §1927 necessitated the filing of a Motion for Sanctions by Houston. [Doc. 285] outlining each of the litigation wrongs committed by Continental in pursuing its frivolous Third-Party Complaint. On September 22, 2017, the Court granted the Motion for Sanctions and awarded sanctions under 28 U.S.C. § 1927 and the Court's inherent authority. [Doc. 306]. However, Continental then filed a Motion for Reconsideration of the Sanctions Order [Doc 307]. The Motion for Reconsideration was insufficient but still required extensive briefing on the part of Houston and its attorneys. [*See* Docs. 309, 310]. The Court denied the Motion for Reconsideration, noting that Continental had failed to articulate any newly discovered evidence or manifest error in law or fact. [Doc. 313].

Houston respectfully requests a full award of its reasonable attorneys' fees and costs in connection with defending this matter, the amounts of which are set forth more fully below.

## LEGAL ANALYSIS AND BASIS OF RELIEF REQUESTED

**I.    Standard for Award of Attorney's Fees**

*A.    Award under 28 U.S.C. §1927 and the Court's Inherent Authority*

Pursuant to the Sanctions Order, the Court has already found that Houston is "entitled to recover reasonable attorneys' fees and costs from Continental and its attorneys incurred by Houston in defending against Continental's Third-Party Complaint." [Doc. 313, p. 9]. With the entry of the Summary Judgment Order and corresponding Judgment, this matter is now concluded as to Houston and a determination as to the reasonable amount

5

of attorney's fees, costs, and expenses awardable in connection with Houston's defense of this matter, as outlined in the Sanctions Order, is appropriate. Accordingly, the only issue left for the Court's consideration as to the Sanctions Order is the reasonableness of the rates charged and the hours expended, as well as the expenses incurred by Houston in the litigation.[2]

In this instance, the test for a determination of what is compensable to Houston is the fees and expenses that would not have been incurred but for the gross misconduct and abusive litigation tactics at issue. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2008). Here, where the "entire course of conduct" is part of a "sordid scheme" on the part of the party and its attorneys, it is reasonable to conclude that all legal expenses incurred were caused solely by the litigation practices of the sanctioned party. *Id.; see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 51, 57 (1991). Furthermore, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." *Goodyear*, 137 S. Ct. at 1188. Further, it is well established that Houston is entitled to compensation for ***all*** of its attorneys' fees and expenses, including those generated after entry of an order determining entitlement to an award of sanctions, including any subsequent fee proceedings or the costs for reasonable fee experts. *See Norelus v. Denny's, Inc*., 628 F.3d 1270, 1298 (11th Cir. 2010) (holding that the plain language of 28 U.S.C. § 1927 includes costs and fees arising

---

[2] Houston is also filing its Bill of Costs simultaneously herewith with respect to the portion of costs taxable under 28 U.S.C. § 1920, including for deposition transcripts, fees for subpoenas, and other costs taxable under this statute. However, under 28 U.S.C §1927, Houston is also entitled to obtain an award of the balance of its costs with respect to Continental's vexatious litigation conduct. *See Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1052 (M.D. Fla. 2003) ("Section 1927 provides that 'any attorney . . . who so multiplies the proceedings in any cases unreasonably and vexatiously may be required by the Court to personally satisfy the excess costs, the expenses, and attorneys' fees reasonably incurred because of such conduct.")

from the sanctions proceedings themselves because such proceedings were necessarily "occasioned by the objectionable conduct").

### B.     *Award under Florida Statutes § 376.313(6)*

In addition to the already established entitlement to an award of reasonable attorneys' fees and costs under 28 U.S.C. § 1927 and the Court's inherent authority, it is also appropriate for the Court to award Houston the full amount of its reasonable attorney's fees and costs pursuant to Florida Statutes § 376.313. The City of Jacksonville initially brought this case against Continental pursuant to Sections 107 and 113(g)(2) of CERCLA, 42 U.S.C. §§ 9607 and 9613(g)(2), along with Florida Statutes § 376.313, seeking to recover its costs with respect to the release and threatened release of hazardous substances from a gas plant, which then migrated onto property owned by the City. On April 16, 2015, Continental filed its Third-Party Complaint [Doc. 96], against Houston, asserting that Houston was in fact the successor-in-interest to the Florida Gas Company, and therefore subject to liability for clean-up costs. Continental's Third-Party Complaint sought such damages, along with attorneys' fees and costs pursuant to Florida Statutes § 376.313(6). Houston answered, likewise seeking fees and costs in the event Houston prevailed against Continental under Florida Statutes § 376.313. [Docs. 138, 139]. It cannot be disputed that Continental's federal law claims overlap with Continental's claim against Houston under Florida Statutes § 376.313.

Florida Statutes § 376.313(6) provides that, "[t]he court, in issuing any final judgment in any such action [pursuant to section. 376.313], may award costs of litigation (including reasonable attorney's fees and expert witness fees) to any party, whenever the court determines such an award is in the public interest." There is very little Florida law addressing the scope of "in the public interest" for a fee award under section 376.313.

7

However, under analogous public interest statutes, courts have reasoned that, in order for a defendant to recover attorney's fees under a "public interest" test, the prevailing defendants must demonstrate that the plaintiff's action was frivolous, unreasonable, or without foundation. As already set forth in the Court's detailed Sanctions Order, Houston readily satisfies this requirement.

Chapter 376, Florida Statutes, was modeled after the Clean Water Act. *See* Fla. Stat. § 376.315 (declaring that Chapter 376 shall be liberally construed to affect the purposes of the Clean Water Act). The Clean Water Act, like the Endangered Species Act and other public interest statutes each provide that a court may award attorneys' fees to "any party" where "appropriate." *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 & n.1 (1983). The phrase "where appropriate" is not defined; however, legislative history reflects that Congress contemplated awarding fees "whenever the court determines such action is ***in the public interest***." *See* S. Rep. No. 92-414 at 81 (1971) (emphasis added); *see also Nat'l Resources Defense Council, Inc. v. E.P.A.*, 539 F.2d 1068, 1071 (5th Cir. 1976)(same);

Cases under the Clean Water Act reflect that a prevailing *defendant* must meet a higher standard to obtain fees, requiring that the Court find the litigation was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Atlantic States Legal Foundation, Inc. v. Onodaga Dep't of Drainage & Sanitation*, 899 F. Supp. 84, 87-88 (N.D. N.Y. 1995) (quoting *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422 (1978)). The goal, understandably, is to "create a deterrent to frivolous litigation.'" *Id*. (quoting *Ruckelshaus*, 463 U.S. at 687-688); *see also Blasland, Bouck & Lee, Inc. v. City of N. Miami*, No. 97-1484, 2001 WL 736006 (S.D. Fla. Feb. 7, 2001) (declining to award fees in favor of successful defendant on §376.313 claim where

8

plaintiff's claim was not frivolous). This interpretation is consistent with a broad range of similar actions aimed at allowing private parties to enforce important rights, but with an emphasis on encouraging legitimate, rather than harassing, litigation. *See, e.g. Dangler v. Yorktown Cent. Sch.*, 777 F. Supp. 1175, 1177 (S.D. N.Y. 1991) ("But, there is no civil right to make false allegations. It is simply not in the public's interest to have frivolous cases litigated. The award of attorney's fees to a prevailing defendant under the *Christianburg* standard thus protects the public from those who irresponsibly claim to be acting for the public good."); *N.L.R.B. v. Food Store Employees Union, Local 347*, 417 U.S. 1, 6 (1974) (noting that the NLRB issued an opinion that found 'an assessment of legal fees would serve the public interest by 'discourag[ing] future frivolous litigation.'"); *Wilson v. Chester Township Police Dep't*, 2005 WL 2704882, at *2 (E.D. Pa. Oct. 20, 2005) ("Legitimate public interests include 'avoiding the costs and disruptions associated with defending marginal or frivolous civil rights actions' and 'detecting and deterring official misconduct.'").

The Court has already found that the Third-Party Complaint against Houston was objectively frivolous. Houston, thus, requests that the Court find that Houston is also entitled to recover its fees and costs against Continental as the prevailing defendant under Florida Statutes § 376.313(6).

## II. The Attorneys Fees Incurred and Paid by Houston are Reasonable and Fully Compensable.

In determining a reasonable fee award, "courts determine 'the number of hours reasonably expended on the litigation' and a reasonable hourly rate, the product of which is a 'lodestar' reasonable sum the party may recover." *Cornett v. Lender Processing Svcs., Inc.*, No. 3:12-cv-233-J-99TJC-MCR, 2013 WL 6643873, at *4 (M.D. Fla. Dec. 17, 2013)

(quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2000). A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. When rates are actually charged to and paid by a client that is "powerful, and perhaps the best, evidence of [the attorneys'] market rate." *Dillard v. City of Greensboro*, 213 F. 3d 1347, 1354-55 (11th Cir. 2000).

In bringing this matter to a final conclusion, more than three years after the filing of the initial Third-Party Complaint, Houston was forced to engage three law firms: Taft Stettinius & Hollister, LLP ("Taft"), Gramling Environmental Law, P.A. ("Gramling"), and Smolker, Bartlett, Loeb, Hinds & Thompson, P.A. ("SBLHT"). The complex nature of the claims at issue required detailed and diligent work by Houston's counsel to bring to light what Continental knew all along – it is the successor in interest to the Florida Gas Company, and to address the underlying issues of CERCLA liability and environmental causation. In uncovering Continental's bad faith scheme, Houston was still forced to investigate and pursue all relevant defenses and issues, preparing for a defense to the underlying alleged CERLA liability. Houston thus required counsel well versed in environmental issues, in addition to issues pertaining to corporate succession.

### A. *Taft Stettinius & Hollister LLP:*

As detailed by the Declaration of Scott Alexander (the "Alexander Declaration"), attached hereto as Exhibit "A," Houston engaged the firm of Taft Stettinius & Hollister LLP ("Taft") to defend it from Continental's Third-Party Complaint.[3] Taft is a well-known

---

[3] Each attorney declaration referenced herein contains the itemized billing statement and expense invoices for each applicable firm. These billing statements have been minimally redacted for privilege in order to allow the Court to fully evaluate the reasonableness of the claimed fees. However, by not redacting references to every attorney-client communication, Houston is not

law firm in the environmental sector, including in particular, defense of CERCLA liability. Taking all of the allegations of the Third-Party Complaint at face value, it was imperative that Houston hire attorneys with specialized knowledge and experience. Scott Alexander has over 25 years of experience concerning all aspects of environmental disputes, and was the primary attorney directing litigation and defense matters on behalf of Taft for Houston. He, along with his team identified below, brought unique and beneficial experience to Houston's legal representation required by Continental's claims. As detailed in the Alexander Declaration, attorneys and other professionals at Taft billed Houston $614,374.00 in connection with its legal services in defending the Third-Party Complaint from 2015 to present:

| Attorney | Years of Experience | Hourly Rate[4] | Hours | Total |
|---|---|---|---|---|
| Scott Alexander (SRAL) | 26 | $375 (rev. rate $367.14) | 559.3 | $205,341.40 |
| Will Gardner (RWGA) | 6 | $275 (rev. rate $262.53) | 680.8 | $178,730.42 |
| Ann O'Connor McCready (AMCR) | 7 | $275 (rev. rate $258.40) | 543.7 | $140,492.08 |
| Steven Shockley (SCSH) | 34 | $375 | 138.8 | $52,050.00 |
| Michael Chambers (MDCH) | 20 | $375 | 43.5 | $16,312.50 |
| John R. Humphrey (JHRU) | 19 | $375 | 39.8 | $14,925.00 |
| Melinda Mears (MJME) | 30 | $175 | 14.2 | $2,485.00 |

---

intending to waive any attorney-client privilege with respect to the underlying communications and documentation exchanged, which are protected by the work-product and attorney-client privileges.

[4] Entries with "rev. rate" account for the average rate actually applied by Taft after adjustments for discounts given to Houston in the ordinary course.

| | | | | |
|---|---|---|---|---|
| (paralegal) | | | | |
| Melissa (Gardner) Macchia (MAGA) | 7 | $275 | 8.4 | $2,310.00 |
| Katherine Grgic (KMGR) | 9 | $275 | 5.3 | $1,457.50 |
| **TOTAL:** | | | | **$614,374.00[5]** |

These fees were reasonably and necessarily incurred by Houston in defending the Third-Party Complaint, which included express claims under CERCLA and other environmental regulations and statutes that Taft was uniquely qualified to handle.

### B. *Gramling Environmental Law P.A.*

As detailed in the Declaration of George Gramling (the "Gramling Declaration"), attached hereto as Exhibit B, Houston engaged the law firm of Gramling Environmental Law, P.A. ("Gramling") to provide strategic defense and substantive advice and representation concerning the litigation. Mr. Gramling is an environmental law attorney with more than 30 years of experience in CERCLA law and the application of environmental regulations and related litigation. He has unique knowledge and experience with Chapter 376, Florida Statutes and other Florida environmental laws, regulations, and was the primary attorney providing substantive CERCLA representation and defense to Houston. Accordingly, he was uniquely equipped to defend Houston against Continental's CERCLA and Florida statutory claims. As detailed in the Gramling Declaration and the billing records attached thereto, Gramling's professionals billed a total of $490,975.00 to Houston in connection with its defense of the Third-Party Complaint:

---

[5] This amount is approximately $270 less than the actual mathematical total of hourly rates x the number of hours due to the average rate discount calculation. However, this amount reflects the actual amount of attorney and paralegal fees actually invoiced to Houston.

| Attorney | Years of Experience | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| George F. Gramling, III | 30 | $375 | 587.3 | $220,237.50 |
| Joshua Coldiron | 6 | $275 | 610.2 | $167,805.00 |
| Larry Kent | 22 | $275 | 374.3 | $102,932.50 |
| **TOTAL:** | | | | **$490,975.00** |

These fees were reasonably and necessarily incurred by Houston in defending the Third-Party Complaint.

### C. *Smolker, Bartlett, Loeb, Hinds & Thompson, P.A.*

Finally, Houston engaged the law firm of Smolker, Bartlett, Loeb, Hinds & Thompson, P.A. ("SBLHT") [6] in 2016. SBLHT is a complex commercial litigation firm with many years of experience representing entities related to Houston in other litigation matters. SBLHT helped uncover and develop the factual record showing the bad faith nature of Continental's claims, as evidenced by Continental's representations to insurance companies. SBLHT was principally involved in preparing and submitting the successful sanctions and summary judgment motions, among other motions referenced above. As detailed in the Declaration of Ethan Loeb (the "Loeb Declaration") attached hereto as Exhibit C, the professionals as SBLHT billed a total of $168,320.00 in connection with Houston's defense of the Third-Party Complaint:

| Attorney | Years of Experience | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Ethan J. Loeb | 15 | $285 | 214.4 | $70,974.00 |
| | | $350 | 28.2 | |
| Jon P. Tasso | 21 | $285 | 145.90 | $73,606.50 |
| | | $350 | 91.50 | |

---

[6] SBLHT was formerly known as Smolker, Bartlett, Loeb, Hinds & Sheppard, P.A. during a portion of the litigation and expenses claimed herein.

| E. Colin Thompson | 15 | $350 | 1.50 | $525.00 |
|---|---|---|---|---|
| Allison C. Doucette | 8 | $285 | 8.8 | $2,508.00 |
| Michael J. Labbee | 4 | $285 | 0.6 | $171.00 |
| Kasey A. Feltner | 1 | $150 | 41.4 | $6,210.00 |
| Kevin A. Healey | 8 | $285 | 8.0 | $2,280.00 |
| Cynthia A. Monroe (paralegal) | | $140 | 61.5 | $10,350.00 |
| | | $145 | 12.0 | |
| Randy J. Garcia (paralegal) | | $140 | 10.3 | $1,442.00 |
| Maggie Carpenter (paralegal) | 11 | $140 | 1.5 | $253.50 |
| | | $145 | 0.3 | |
| **TOTAL (through September 30, 2018):** | | | | **$168,320.00** |

In addition to the invoiced amount reflected above, SBLHT has recorded additional legal fees in the amount of $17,385 in preparing this Motion and supporting documentation. All of these fees were reasonably and necessarily incurred by Houston in defending the Third-Party Complaint.

### III. The Additional Expenses Incurred by Houston are Compensable under 28 U.S.C § 1927 and/or Florida Statutes § 376.313(6).

In addition to an award of attorney's fees, "Section 1927 also permits the award of costs and expenses incurred because of the attorney's misconduct." *Amer. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2008 WL 906739, at *16 (M.D. Fla. Apr. 2, 2008). Likewise, Florida Statutes § 376.313(6) specifically contemplates an award of fees, and expenses, including specifically expert witness expenses. In connection with its litigation of Continental's frivolous claims, Houston has incurred the following expenses ***in addition to*** those costs taxable under 28 U.S.C. § 1920:

A. *Expert Witness Fees:*

Houston has expended $219,978.87 in expert witness fees necessary to its defense of the Third-Party Complaint. These fees are detailed, including invoice back up, in the Declarations of Alexander and Loeb, and include fees for expert services by Trenam Law, Silar Services, Sponsel CPA Group, Corporate Environmental Solutions, and Ramboll Environ. These expert fees were incurred as a direct and immediate result of Continental's Third-Party Complaint asserting CERCLA and Florida statutory liability under Chapter 376, Florida Statutes. Under both 28 U.S.C. § 1927 and Florida Statutes § 376.313(6), these expenses are compensable. *See, e.g. Amer. Honda Motor*, 2008 WL 906739, at *16 (awarding expenses associated with retained experts under § 1927); Fla. Stat. § 376.313(6) (declaring that a court "may award costs of litigation (including reasonable attorney's fees and expert witness fees)").

B. *Legal Research:*

Houston has expended $1,663.37[7] in expenses relating to computerized legal research. Such expenses are compensable as a litigation expense. *See, e.g. Amer. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2008 WL 906739, *16 (M.D. Fla. Apr. 2, 2008) (awarding electronic research costs as portion of expense award under § 1927).

C. *Travel Costs:*

Houston has expended $37,115.00[8] in costs and expenses associated with travel. As detailed in the Declarations of Alexander, Gramling, and Loeb, these costs and expenses

---

[7] The breakdown of legal research is found in the Loeb Declaration.

[8] The detailed breakdown of travel costs and associated invoice back up are found in the Declarations of Alexander, Gramling, and Loeb.

were necessarily incurred by virtue of Continental's vexatious litigation practices and the necessary involvement of each counsel during the applicable time period given their unique skills and experience. Accordingly, special circumstances exist to award travel costs to Houston under 28 U.S.C. § 1927 and Florida Statutes § 376.313(6). *See, e.g. Mencia v. Allred*, 2017 WL 4480836, at *13 (D. Utah Oct. 6, 2017) ("Travel costs for out of town counsel should be reimbursed where there is a showing that the use of out-of-town counsel was necessary.").

### D. *Mediation Expenses*

Houston has expended $1,509.90 in connection with the mediation in this matter with Terrence M. White, of the firm of Upchurch Watson White & Max, as identified in the Loeb Declaration. This expense is compensable. *See Malibu Media, LLC v. Pelizzo*, No. 12-22768-CIV, 2014 WL 11444098, at *7 (S.D. Fla. Feb. 18, 2014), report and recommendation adopted, 2014 WL 11456462 (S.D. Fla. Mar. 28, 2014) (awarding mediation fees to defendant as recoverable litigation expense).

### CONCLUSION AND REQUESTED FURTHER PROCEDURE

For the reasons set forth above, Houston respectfully submits that it is entitled to an award of attorneys' fees and costs in the amount of $1,551,321.14, exclusive of additional fees and costs incurred by Houston to litigate the issue of fees and costs, and the reasonableness of such fees.

Houston requests that the Court:

(1) permit limited written and deposition discovery on the issue of fees, with such discovery to be completed within ninety days; and

(2) Pursuant to Rule 54 (which merely requires estimated fees in a post-judgment fee motion), Houston states that it will submit an affidavit on reasonable attorneys' fees within forty-five days.

### Rule 3.01(g) Certification

The undersigned has conferred with counsel for Continental regarding the relief sought herein, and has been told that Continental opposes the requested relief, in both entitlement and amount.

**WHEREFORE**, Houston asks that the Court enter an Order in accordance with this Motion, and provide Houston such other and further relief as appropriate.

>  **/s/ Ethan J. Loeb**
> ETHAN J. LOEB
> Florida Bar No. 0668338
> ethanl@smolkerbartlett.com
> susanm@smolkerbartlett.com
> JON P. TASSO
> Florida Bar No.: 01201510
> jont@smolkerbartlett.com
> susanm@smolkerbartlett.com
> SMOLKER, BARTLETT, LOEB,
> HINDS & THOMPSON, P.A.
> 100 North Tampa Street, Suite 2050
> Tampa, Florida 33602
> (813) 223-3888
> (813) 228-6422 (fax)
> Attorneys for Third-Party Defendants,
> HOUSTON PIPELINE COMPANY, L.P.
> and HPL GP, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Michael B. Wedner, Esquire<br>mwedner@coj.net<br>lcenac@coj.net<br>Jason R. Teal, Esquire<br>jteal@coj.net<br>jeanh@coj.net<br>dibird@coj.net<br>David J. D'Agata<br>dagata@coj.net<br>garelick@coj.net<br>hdugan@coj.net<br>CITY OF JACKSONVILLE,<br>OFFICE OF GENERAL COUNSEL<br>St. James Building, Suite 480<br>117 W. Duval Street<br>Jacksonville, FL 32202<br>***Attorneys for The City of Jacksonville*** | William L. Pence, Esquire<br>wpence@bakerlaw.com<br>dheber@bakerlaw.com<br>orlbakerdocket@bakerlaw.com<br>Kristina R. Ramsey, Esquire<br>kramsey@bakerlaw.com<br>Michael S. Vitale, Esquire<br>mvitale@bakerlaw.com<br>BAKER & HOSTETLER, LLP<br>200 Orange Avenue, Suite 2300<br>Orlando, FL 32801<br>***Attorneys for The City of Jacksonville*** |
| Dominick J. Graziano, Esquire<br>dgraziano@bgrplaw.com<br>rshertzinger@bgrplaw.com<br>Erin B. Reynolds, Esquire<br>ereynolds@bgrplaw.com<br>salbee@bgrplaw.com<br>BUSH GRAZIANO RICE & PLATTER<br>101 E. Kennedy Boulevard, suite 1700<br>Tampa, FL 33602<br>***Attorneys for Claude Nolan Cadillac, JEA***<br>***f/k/a Jacksonville Electric Authority*** | Tim E. Sleeth, Esquire<br>John R. Thomas, Esquire<br>tsleeth@smithhulsey.com<br>225 Water Street, Suite 1800<br>Jacksonville, Fl 32202<br>***Attorneys for Continental Holdings, Inc.*** |
| James C. Rinaman, III, Esquire<br>jrinaman@rinamanlaw.com<br>zring@rinamanlaw.com<br>JAMES C. RINAMAN III &<br>ASSOCIATES<br>1054 Kings Avenue<br>Jacksonville, FL 32207<br>***Attorneys for Jacksonville Hospitality Holdings L.P.*** | Mary C. Sorrell, Esquire<br>sorrel@fdn.com<br>MARY C. SORRELL, P.A.<br>P.O. Box 330108<br>Atlantic Beach, FL 32233<br>***Attorneys for Shoppes of Lakeside, Inc.*** |

**/s/ Ethan J. Loeb**
ETHAN J. LOEB
Florida Bar No. 0668338
ethanl@smolkerbartlett.com
susanm@smolkerbartlett.com
JON P. TASSO
Florida Bar No.: 01201510
jont@smolkerbartlett.com
cynthiam@smolkerbartlett.com
SMOLKER, BARTLETT, LOEB,
HINDS & THOMPSON, P.A.
100 North Tampa Street, Suite 2050
Tampa, Florida 33602
(813) 223-3888
(813) 228-6422 (fax)
Attorneys for Third-Party Defendants,
HOUSTON PIPELINE COMPANY, L.P.
and HPL GP, LLC