UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE CITY OF JACKSONVILLE,

        Plaintiff,

v.                                 Case No. 3:12-CV-850-J-25MCR

SHOPPES OF LAKESIDE, INC., et al.,

        Defendants.

)
)
)
)
)
)
)

**CONTINENTAL'S MOTION FOR
SUMMARY JUDGMENT ON (I) THE
CITY'S SECOND AMENDED COMPLAINT AND
(II) CONTINENTAL'S COUNTERCLAIMS AGAINST JEA[1]**

Pursuant to Rule 56, Fed. R. Civ. P., Continental Holdings, Inc. ("Continental")
moves for (i) summary judgment on the City's second amended complaint against
Continental (the "Complaint"; Doc. No. 87), and (ii) partial summary judgment on
Counts 10 and 12 of Continental's amended third party complaint against JEA (the
"Third Party Complaint"; Doc. No. 97), and in support says:

I.       **Summary of the Motion.**

        A.      The City's Complaint is barred because the City entered into settlement
               agreements with the Florida Department of Environmental Protection
               for the rehabilitation of Confederate Park.

        1.      The City alleges in its complaint that environmental contamination in

and around Confederate Park (the "Site") originated from discharges from a

---

[1] Continental files this motion in accordance with the Court's Order of October 30, 2018 (Doc. No. 326).

manufactured gas plant (the "Gas Plant") the Jacksonville Gas Company operated near the park between 1874 and 1912.

2.      Count One of the City's Complaint seeks to recover from Continental (as the alleged successor of the Jacksonville Gas Company) the City's past and future response costs and other damages under (i) Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") (Count One)[2] and (ii) Section 376.313, Florida Statutes (Count Two).[3]

3.      Because the City entered into agreements with the FDEP in 2002 to conduct a site assessment and in 2018 for the rehabilitation of the contamination at Confederate Park, the City is barred, as a matter of law, from suing Continental under Section 107(a) or Section 376.313, Florida Statutes.

B.      JEA is liable to Continental for contribution.

4.      Counts Ten and Twelve of Continental's Third Party Complaint seek contribution from JEA under (i) Section 113(f) of CERCLA (Count Ten) and (ii) Section 376.313, Florida Statutes (Count Twelve) for the costs of remediation that the City seeks to recover from Continental.

5.      There is no material issue of fact that record evidence shows that (i) the City constructed, owned, and operated sewer lines near the Gas Plant; (ii) the City

---

[2] Count One also seeks declaratory relief pursuant to Section 113(g)(2) of CERCLA to adjudicate the parties' respective liabilities for current and future costs of remediation.

[3] On September 27, 2018, the Court granted the City a partial summary judgment on the City's claim that Continental is the successor of the Jacksonville Gas Company (Doc. No. 315) and therefore potentially liable under CERCLA for the costs of remediating the contamination at the Site that discharged from the Gas Plant. Continental believes the summary judgment was an error and intends to appeal the summary judgment. Nonetheless, Continental is entitled under CERCLA and Section 376.313, Florida Statutes, to contribution from other persons who are also responsible for that same contamination.

knew the Gas Plant used City sewers to discharge waste into Hogans Creek; and (iii)

by City ordinance, JEA expressly assumed the City's liabilities arising out of its

operation of the City sewers.  Under those circumstances, JEA is liable to Continental

under CERCLA and Section 376.313, Florida Statutes, for contribution as an operator

of a "facility" (the sewers) at the time of disposal of a hazardous substance.

II.     **The undisputed facts.**

     A.     The City knew about and had the ability to control the Gas Plant operations.

     6.     The City had knowledge of the Gas Plant's operations because City

officials incorporated and managed the entity that owned and operated the Gas Plant.

     7.     On April 7, 1874, Samuel B. Hubbard and William Bostwick were

elected to the Jacksonville City Council (Tab A, City Depo. at 312:11-312:16).[4] On

July 18, 1874, Hubbard and Bostwick founded and served as board members for the

Citizens Gas Light Company[5] ("Citizens Gas") (Tab A, City Depo. at 307:2-308:8;

Tab B, at p. 3).[6]

     8.     John C. L'Engle, another founder, board member, and the first

president of Citizens Gas, served as Chairman of the City's Board of Public Works

(Tab A, City Depo. at 310:1-310:7, 315:3-317:16; Tab B, at 3). Hubbard later took

---

[4] Documents in Continental's separately filed appendix are cited as "Tab ___."  Tab A is excerpts from the deposition of Jeffrey Foster as the City of Jacksonville's Rule 30(b)(6) corporate representative, dated August 2, 2016 ("City Depo.").

[5] Citizens Gas Light Company (entity number FL-000009) changed its name in 1887 to The Citizens Gas and Electric Company, in 1898 to The Citizens Gas Company, and in 1907 to the Jacksonville Gas Company.

[6] Tab B is Defendants' Exhibit 303, Articles of Incorporation of the Citizens Gas Light Company, filed July 18, 1874.

over as Citizens Gas' president and also served on the Board of Trustees of the City's

Sanitary Improvement Fund (Tab A, City Depo. at 314:7-314:19, 338:9-338:14). City

officials therefore oversaw Citizens Gas' operations (Tab A, City Depo. at 337:23-

339:07).

9.      Moreover, under City Ordinance C2, the City's Board of Public Works

had "power to regulate, restrict and control such acts and doings of [the Gas Plant]

which may in any manner affect the health and safety of the inhabitants of said

city…" (Tab A, City Depo. at 346:3-347:5).

B.      City sewer lines discharged Gas Plant Waste into Hogans Creek.

10.     The City owns Confederate Park, which is within the Site (Complaint,

p. 2; Doc No. 87).

11.     It is undisputed in the record that from approximately 1874 to 1912, the

Gas Plant operated at the Site and that the Gas Plant discharged hazardous substances

(the "Gas Plant Waste") now found at the Site (Complaint, p. 5; Doc. No. 87).

12.     The City directed the construction of a sewer system in downtown

Jacksonville between November 1879 and April 1881 (Tab C, pp. 41-44).[7]

13.     During the Gas Plant's operation (no later than 1888), the City had

*actual knowledge* that Gas Plant Waste was being discharged from City sewer pipes

into the Hogans Creek:

> Q.      Do you deny that the City was aware of the
> operations and the discharges that were created from

---

[7] Tab C is excerpts from John P. Varnum, The Jacksonville Board of Trade, Jacksonville, Florida: A
Descriptive and Statistical Report (1885).

the gas plant during its years of operation between 1874 and 1912?

A.    Are you saying that I'm—that we deny that?

Q.    I'm asking. Do you deny it?

A.    *No. We understood that there was a discharge. We have records that there was a discharge from a sewer pipe. That's clearly documented that that was going into the creek.*

> Tab A, City Depo. at 350:2-350:14 (emphasis added).

14.    The City also was aware the waste was hazardous.  Gas Plant Waste flowing from the sewer into Hogans Creek once caught fire and damaged a bridge spanning the creek (Tab A, City Depo. at 341:20-344:7).  To prevent future fire damage to the bridge, the City prohibited the Gas Plant "from running naphtha waste under said bridge" (Tab A, City Depo. at 343:7-9).  There is, however, no evidence the City took any action between 1874 and 1912 to prevent sewers from discharging Gas Plant Waste into other parts of Hogans Creek.

C.    <u>JEA assumed the City's liabilities for the sewer lines.</u>

15.    JEA acknowledges it operates wastewater utility lines throughout the Site:

> JEA is allowed to access, operate, and maintain electric, water, and wastewater utility lines located within the Site, specifically the Orange Street Right of Way, Ocean

Street Right of Way, and within the boundaries of
Confederate Park.

> JEA Motion for Summary
> Judgment (Doc. No. 308), p. 3.

16. In 1997, City of Jacksonville Ordinance 97-229-E, established JEA's
authority to operate sewer lines at the Site:

> JEA's right to access, operate, or maintain water and
> wastewater utility lines is established in the City of
> Jacksonville Ordinance 97-229-E, as amended.

> JEA Motion for Summary
> Judgment, Exhibit 1 at 5 (Doc. No.
> 308).

17. Under Ordinance 97-229-E, *JEA* expressly assumed the City's liability
for any claims arising out of *the City's* ownership and operation of City sewer lines
(Tab D, Ordinance 97-229-E, Section 6(5)).

D. The City agreed with FDEP to rehabilitate Confederate Park.

18. On December 19, 2001, the FDEP identified the City as the responsible
party for contamination at Confederate Park discharged from the Gas Plant (Tab E, p.
17).[8]

19. On March 22, 2002, the FDEP and the City entered into a consent
order, pursuant to which the City agreed to perform a contamination assessment of the
Site (the "Consent Order"; Tab F).

---

[8] Tab E is the FDEP's "Site Inspection Main Street Manufactured Gas Plant, Duval County, Florida" dated
December 19, 2001.

20.     On September 18, 2018, FDEP and the City (and others) entered into a Brownfield Rehabilitation Agreement Pursuant to Section 376.80(5), Florida Statutes (the "Brownfield Agreement"; Tab G).     Under the terms of the Brownfield Agreement, the FDEP and the City agreed the City would rehabilitate the contamination at Confederate Park, which is located on the Site (Tab G, p. 2).

## III.    Argument.

### A.     Summary judgment standard.

21.     When the moving party "points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must 'go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Larkin v. Envoy Orlando*, 116 F. Supp. 3d 1316, 1318 (M.D. Fla. 2015).

### B.     The City is barred from suing Continental under Sections 107(a) and 113(g)(2) or Chapter 376, Florida Statutes.

#### 1.     *The City is barred from suing Continental under Section 107(a) of CERCLA.*

22.     Under Section 107(a) of CERCLA, an innocent party who is liable for the cost of remediating contaminated property can sue any party responsible for the contamination and hold that party liable for the costs of remediation where their

conduct causes an indivisible injury to the innocent plaintiff.[9]  *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).

23.     Under Section 113(f) of CERCLA, a person who is liable or potentially liable under Section 107(a) may sue other responsible parties for contribution.  *See id*.

24.     The Eleventh Circuit held in *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230 (11th Cir. 2012), that a party who has entered into a settlement agreement with the United States or a state government to rehabilitate contaminated property may *not* sue other responsible parties under Section 107(a); rather the settling party is limited to suing other responsible parties for *contribution* under Section 113(f).

25.     In *Solutia*, Solutia, Inc. and Pharmacia Corporation ("Solutia and Pharmacia") entered into a consent decree with the Environmental Protection Agency that imposed joint and several liability upon Solutia and Pharmacia to clean up contaminated property.   Solutia and Pharmacia in turn sued other potentially responsible parties for joint and several liability under Section 107(a) *and* for contribution under Section 113(f).  *Id.* at 1234.

26.     The Eleventh Circuit held that that because Solutia and Pharmacia had entered into a consent decree with the EPA, they were limited to suing third parties for contribution under 113(f), and barred from suing third parties for joint and several liability under Section 107(a).  *See Solutia* at 1236 ("§ 113(f) provides the '*exclusive remedy* for a liable party compelled to incur response costs pursuant to an

---

[9] The City is *not* an innocent party.  The City had the ability to control Gas Plant operations (Tab A, City Depo. at 346:3-347:5), and, with actual knowledge of the Gas Plant Waste discharges into Hogans Creek, the City channelized and bulkheaded 6,300 linear feet of the creek in 1929, displacing  (Tab H, pp. 17-18; Site Assessment Report, May 2011 Confederate Park Site prepared for City of Jacksonville).

administrative or judicially approved settlement under §§ 106 or 107,' including a consent decree.") (quoting *Morrison Enter., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); emphasis added).

27.     The City was and is the owner of a substantial portion of the Site, which makes it a liable party under CERCLA (Tab F, p. 2).

28.     Because the City's Brownfield Agreement with FDEP compels the City to rehabilitate Confederate Park, the City's exclusive remedy against Continental is for contribution under Section 113(f).

29.     The City, however, sued Continental in this action under Section 107(a), not for contribution under Section 113(f). *Solutia*, therefore, requires the Court to grant a summary judgment to Continental on Count One of the City's Complaint.[10]

> ### 2.     *The City also is barred from suing Continental under Section 376.313, Florida Statutes.*

30.     Count Two of the City's Complaint seeks to hold Continental jointly and severally liable for the costs of remediating the Site under Section 376.313, Florida Statutes.

31.     Because "[Chapter] 376 of the Florida Statute is interpreted consistently with CERCLA," the Court should also grant Continental a summary

---

[10] The Court should also grant summary judgment to Continental on the City's Section 113(g)(2) claim under Count One.  Section 113(g)(2) provides that in an initial action under Section 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). "Declaratory relief, however, is only available 'if liability for past costs has been established under section 107.'"  *Clark v. Ashland, Inc.*, 2:13-CV-794-FTM-2, 2015 WL 1470657, at *3 (M.D. Fla. 2015) (quoting *City of Colton v. American Promotional Events*, 614 F.3d 998, 1008 (9th Cir. 2010)).

judgment on Count Two of the City's Complaint. *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, Case No. 3:03-cv-614-J-20MMH, 2005 WL 5660476, at *1, n.3 (M.D. Fla. Mar. 22, 2005) (relying on case law construing CERCLA to adjudicate motions for summary judgment under Section 376.313), aff'd, 463 F.3d 1201 (11th Cir. 2006).

      C.      JEA is liable to Continental for contribution for Gas Plant Waste deposited from the sewer into Hogans Creek.

      32.      To prevail on a claim under CERCLA, the plaintiff must demonstrate:

      1.      the site in question is a "facility" as defined in § 101(9) of CERCLA…;

      2.      a release or threatened release of a hazardous substance has occurred;

      3.      the release or threatened release has caused the plaintiff to incur response costs consistent with the "national contingency plan" (NCP); and

      4.      the defendant is a "covered person" under § 107(a) of CERCLA.

> *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496–97 (11th Cir. 1996) (citations omitted).

      33.      It is not reasonably subject to dispute that (i) a release of a hazardous substance occurred at the Gas Plant that has caused Continental to incur response costs consistent with the national contingency plan,[11] and (ii) JEA assumed any

---

[11] For example, in response to FDEP's request to the City and Continental, Continental submitted a remedial action plan and obtained FDEP approval for a work plan to implement the first phase of a remedial action plan for the Site (Tab I – March 30, 2016 Remedial Action Plan submitted by Continental; Tab J – April 14, 2017 Letter from FDEP to Continental).

liabilities the City may have incurred as a result of its operations of City sewer lines at the Site.

34.     Therefore, the only issues for this Court's determination are whether, under CERCLA, (i) City sewers that discharged Gas Plant Waste into Hogans Creek constitute a "facility," and (ii) the City and JEA are each a "covered person."

35.     If (i) the sewers are facilities under CERCLA and (ii) the City and JEA are covered persons, JEA—*having assumed the City's liability for sewer operations*—is liable for its share of any response costs Continental incurs in connection with releases of hazardous substances at the Site.

> *1.     Sewers are a "facility" under CERCLA.*

36.     A "facility" is defined in CERCLA as:

> (A) any building, structure, installation, equipment, pipe or pipeline (*including any pipe into a sewer or publicly owned treatment works*), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.
>
>                                   42 U.S.C. § 9601(9) (emphasis added).

37.     "[T]he term 'facility' enjoys a broad and detailed definition." *United States v. Bestfoods*, 524 U.S. 51, 56 (1998). "[I]n order to show that an area is a 'facility,' the plaintiff need only show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there." *3550 Stevens Creek*

*Associates v. Barclays Bank of California*, 915 F.2d 1355, 1360 (9th Cir. 1990) (quoting *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143, 1148 (D.Ariz.1984)).

38.     A sewer line into which contaminated waste is discharged is a "facility" as defined by CERCLA. *See United States v. Meyer*, 120 F. Supp. 2d 635, 639 (W.D. Mich. 1999) ("The undisputed facts show that, between 1972 and 1978, Northernaire discharged waste waters containing hazardous substances into at least one of the sewer lines exiting its building and that those hazardous substances were deposited in the adjoining sewer lines. *Accordingly, the sewer lines, collectively and individually, qualify as a CERCLA 'facility.'*") (emphasis added).

39.     Because the City admits that Gas Plant Waste was discharged from the sewer lines at the Site (Tab A, City Depo. at 350:2-350:14), the sewer lines are a CERCLA facility.

### 2.     *The City and JEA are each a covered person under CERCLA*.

40.     CERCLA's definition of a "covered person" includes (i) "the owner and operator of a vessel or a facility" and (ii) "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of…." 42 U.S.C. § 9607(a)(1) and (2).

41.     Because (i) JEA currently owns the sewers from which Gas Plant Waste was discharged into Hogans Creek, and (ii) the City owned and operated the sewers at the time Gas Plant Waste discharged into Hogans Creek, the City and JEA are each a covered person under CERCLA.

>    *3.     JEA assumed liabilities arising out of the City's operation of*
>    *City sewer lines at the Site.*

42.     By Ordinance 97-229-E, JEA expressly assumed the City's liability for

any claims arising out of *the City's* ownership and operation of City sewer lines:

> All claims and suits by and against the City arising out of
> its ownership and operation of the water and wastewater
> (sewer) utility system shall by operation of this
> ordinance and without further act become claims and
> suits by or against the Jacksonville Electric Authority;…
>
>                         Tab   D,   Ordinance   97-229-E,
>                         Section 6(5).

43.     Accordingly, JEA assumed the City's liability to Continental for

contribution under Section 113(f) of CERCLA that resulted from the City's operation

of the sewer lines at the Site during the years of the Gas Plant's operations (1874

through 1912).

D.      JEA is liable to Continental for contribution under the Florida Act.

44.     Section 376.313(3), Florida Statutes, permits parties to seek

contribution from other responsible parties for damages resulting from a discharge of

pollution. *See Aramark Uniform and Career Apparel, Inc.,* 894 So. 2d 20, 28 (Fla.

2005).

45.     Because Section 376.313 is construed consistently with CERCLA, JEA

is liable to Continental for contribution under Section 376.313 for the same reasons

JEA is liable to Continental under CERCLA. *See Atlanta Gas Light Co. v. UGI*

*Utilities, Inc.*, Case No. 3:03-cv-614-J-20MMH, 2005 WL 5660476, at *1, n.3 (M.D.

Fla. Mar. 22, 2005), aff'd, 463 F.3d 1201 (11th Cir. 2006) ("Ch. 376 of the Florida Statute is interpreted consistently with CERCLA.").

**IV.     Conclusion.**

46.     For the reasons stated above, Continental is entitled to (i) a summary judgment on the City's Complaint against Continental for joint and serval liability under CERCLA Sections 107(a) and 113(g)(2) (Count One), and Section 376.313, Florida Statutes (Count Two), and (ii) a partial summary judgment for liability on Continental's Third Party Complaint against JEA on Counts 10 (contribution under Section 113(f)) and 12 (contribution under Section 376.313).

SMITH HULSEY & BUSEY

By  /s/ *John R. Thomas*
        Stephen D. Busey
        Allan E. Wulbern
        John R. Thomas

Florida Bar Number: 117790
Florida Bar Number: 0175511
Florida Bar Number: 77107
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
busey@smithhulsey.com
awulbern@smithhulsey.com
jthomas@smithhulsey.com

Attorneys for Continental Holdings, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 15th day of January 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  none.

_____ */s/ John R. Thomas* _____
Attorney

01023839.3